## MUSKOGEE CO. v. YAHOLA SAND CO.

No. 6474. Opinion Filed July 25, 1916.

(159 Pac. 898.)

### 1. Damages—Breach of Contract—Prospective Profits.

Prospective profits, proximately resulting from the breach of a contract, are recoverable in an action for damages, where the amount thereof is not contingent and speculative, but can be measured with reasonable certainty.

### 2. Damages—Breach of Contract—Measure.

Where a construction company, holding a contract to construct and equip a line of railway, enters into a contract with a sand company, whereby it agrees to construct and equip a switch for the use of the sand company, and to furnish a stipulated number of cars per annum, and to handle the same at competitive freight rates, and to credit the sand company 50 per cent. of the amount of the freight charged on each bill until the total equals the sum of $3,000, which the sand company had advanced on the cost of the construction of the switch, and the construction company defaulted in its contract, and by agreement with the railway company the latter takes over the completion of the construction work, but refused to assume the obligation of the contract with the sand company, and the sand company, in order to get the switch, entered into a new contract with the railway company for its construction, and the switch was constructed, but the railway company refused to account for the $3,000 advanced to the construction company, and also refused to furnish any stipulated number of cars for the use of the sand company, held, that in an action for damages by the said company the construction company was liable to it in damages, and the measure of its damages was the $3,000 advanced, and interest thereon, at 6 per cent. per annum from the date of payment.

(Syllabus by Galbraith, C.)

Error from District Court, Muskogee County; R. P. de Graffenried, Judge.

Action by the Yahola Sand Company against the Muskogee Company. There was judgment for the plaintiff; the defendant brings error. Affirmed upon condition.

Thomas H. Owen, Jos. C. Stone, and Walter S. Moore, for plaintiff in error.

Wm. T. Hutchings and Wm. P. Z. German, for defendant in error.

Opinion by GALBRAITH, C. The Muskogee Company, the plaintiff in error, was a construction company, and was under contract with the People's Electric Railway Company to construct and equip a line of railway from the city of Muskogee to the town of Ft. Gibson, a distance of 40 miles. This action was commenced in the trial court by the defendant in error against the plaintiff in error, to recover damages for a breach of the following contract:

"Muskogee, Oklahoma, November 2, 1911.

"Muskogee Company, owning and operating the People's Electric Railway Company, first party, and the Yahola Sand Company, second party, agrees as follows:

"That the first party will construct a spur track from a connection with the People's Electric Railway track from a point between Rogers Villa and the Arkansas river south-

ward onto the sand and gravel bar in the Arkansas river in the southwest part of section twenty-seven, township fifteen north, range nineteen east, Muskogee county, state of Oklahoma, and provide upon said bar sufficient switch tracks from said main spur to conduct the sand and gravel business from said bar, a total of not exceeding one mile and a half of main spur and switches and up to a full mile and a half if such amount is required, and will handle and transport the gravel and sand product of the second party to all markets accessible by People's Electric Railway and any connecting line of railroad charging at all times a competitive rate, the said first party agrees to assume switching charges where it is necessary for second party to make a west side delivery, and furnish ample cars for the business of said second party. Said track to be in place and equipment ready for transportation of sand, and gravel by the fifteenth day of December, nineteen hundred and eleven.

"And in consideration of the foregoing the second party agrees as follows:

"First: It will now advance to the first party the sum of three thousand dollars in cash to apply upon the c st of track material, and further agrees to load and ship not less than 1800 cars of sand or gravel, either or both, annually, including ballast furnished party of the first part.

"Second party further agrees to furnish f. o. b. cars at said gravel bar from time to time such screened gravel suited for ballasting purposes as first party may require not to exceed one hundred yards per day for its own use at a cost of twenty cents per cubic yard paid for by first party to the second party in cash, excepting only that the first two thousand dollars' worth of such ballasting material shall be added to the three-thousand dollar track material fund above mentioned, making a sum total of five thousand dollars, and second party agrees that the five thousand dollars shall be repaid by the first party unto second party by the crediting to the second party of one-half of each and every freight bill due thereafter from second party to first party until the total of such credits shall fully reimburse said five thousand dollars.

"And second party agrees that within not later than ten days after such spur track and switches is in place ready for operation that second party shall be prepared and equipped to load and ship sand and gravel from said bar and will ship not less than 1800 cars annually.

"The first party agrees to do and perform all the things to be done and performed by it as hereinbefore stated, and to maintain and operate said track so long as second party or its assigns shall furnish throughout the year said 1800 cars of sand or gravel for shipment annually.

"Witness our hands and seals this second day of November, A. D. nineteen hundred and eleven. Muskogee Company, by C. N. Haskell, President. Attest: Wm. Murdock, Secretary. (Muskogee Company Seal.) Yahola Sand Company, by T. J. Sidener, President. Attest: A. H. White, Secretary. (Yahola Sand Company Seal.)"

It was alleged in the petition that the plaintiff had paid the $3,000 and was ready and willing to comply with the terms and conditions of said contract by it to be performed, and that the Muskogee Company had breached said contract in this, that it failed to build and equip the switch and to furnish cars and equipment that it had agreed to do, and that in February, 1912, it surrendered its construction contract to the People's Electric Railway Company, and that neither the Muskogee Company nor the People's Electric Railway Company would perform said contract, after demand and request to do so, and that on March 30th it was compelled to enter into a new contract for the construction and equipment of said switch, and that the People's Electric Railway Company refused to account for the $3,000 which it had paid the Muskogee Company, and also refused to agree to furnish cars as the Muskogee Company had agreed to do; that thereby the plaintiff was damaged in the sum of $3,000 cash paid the Muskogee Company, and interest thereon, and was further damaged in the sum of $2,000, loss of profits, which it would have made on sand and gravel if the switch had been constructed by December 15, 1911, as the Muskogee Company agreed to do. The Muskogee Company answered, admitting the execution of the contract, but alleged that it had no power under its charter to make the contract for itself, as it was simply a construction company and not an operating company, and that it did not make said contract as principal but made the same as agent for the People's Electric Railway Company, and that not it, but its principal, if any one, was liable for the breach of said contract, and, further, that the Sand Company knew that it was contracting with the Muskogee Company, as agent of the People's Electric Railway Company, which had assumed all of the burdens of the contract with the Sand Company, and that afterwards the Sand Company had entered into a new contract with the People's Electric Railway Company, covering the same subject-matter as the contract in suit, and the Muskogee Company was thereby relieved from all liability on account of such contract. There was a reply in the nature of a general denial to the new matter set up in the answer. On the issues thus formed the cause was submitted to a jury, and a verdict returned for

the plaintiff in the sum of $4,645. Judgment was rendered upon this verdict, and after the overruling of the motion for new trial the cause was regularly appealed to this court.

The assignments of error are under four heads: (1) That the contract in suit was ultra vires; (2) that the contract was entered into by the Muskogee Company as agent for and on behalf of the People's Electric Railway Company, and the Muskogee Company is not liable as principal contracting party; (3) error in permitting the Yahola Sand Company to prove as part of its damages loss of profits; (4) error of the court in refusing instructions Nos. 1 and 2, requested in behalf of the Muskogee Company.

As to the first assignment of error it is sufficient to say that if it be assumed that the contract in suit is ultra vires and beyond the power of the Muskogee Company to make, this plea is not available to the Muskogee Company in this action, for the reason that it received the benefits of said contract and cannot relieve itself of its burdens by this plea. Crowder State Bank v. Ætna Powder Co., 41 Okla. 394, 138 Pac. 392, and the line of cases cited therein. In the case of Zabriskie v. Cleveland, Col. & Cin. R. Co., 23 How. 381, 16 L. Ed. 488, next to the last sentence, the court, in speaking of the ultra vires contention made by the appellee, said:

"A corporation, quite as much as an individual, is held to a careful adherence to truth in their dealings with mankind, and cannot, by their representations or silence, involve others in onerous engagements, and then defeat the calculations and claims their own conduct had superinduced."

The refusal to give instruction No. 1, requested by the Muskogee Company, is assigned as error. It reads:

"You are instructed that if you believe from a fair preponderance of the evidence that the managing officers of the plaintiff, Yahola Sand Company, entered into a contract on November 2, 1911, with the Muskogee Company, believing that they were dealing solely with the Muskogee Company and without the knowledge that the contract was made for the use and benefit of the People's Electric Company, and that the defendant, Muskogee Company, breached said contract by failing to expend the $3,000 for track material for the spur track, as required by the terms of said contract, and if you further believe that the plaintiff, Sand Company, was damaged by such breach, then your verdict should be for the plaintiff, and the measure of damages in that event would be $3,000, the amount paid to the Muskogee Company, together with 6 per cent. interest from the dates of the various payments which made up the $3,000."

The instructions given by the court to the jury governing the measure of damages were as follows:

"You are further instructed that if you find by a preponderance of the evidence that said contract was violated and broken by the defendant without any fault on the part of the plaintiff, in estimating the damages that the plaintiff would be entitled to, you may take into consideration the $3,000 paid by the plaintiff to the defendant, with 6 per cent. interest thereon from the time of the various payments to this time."

"You are instructed that if you further believe that the defendant failed to comply with the contract sued on in this case, the plaintiff is entitled to recover of the defendant, in addition to the $3,000 paid to it by the plaintiff, together with the legal interest thereon, the damage it has suffered, if any, by reason of the failure of the defendant to comply with its contract to furnish cars and transport the sand and gravel of the plaintiff; and, in arriving at this, you may take into consideration the profits which a preponderance of the evidence shows the plaintiff would have received had it been able to supply said sand and gravel to its customers who sought to purchase it at the market or fixed price, and in amounts ascertainable from the evidence, not to exceed $2,000."

It will be observed that the court in its instructions followed the rule for the measure of damages embraced in requested instruction No. 1. However, the court did not limit the measure of damages to the $3,000 and the interest thereon, as in the requested instruction, but extended the measure of damages to include profits that may have been reasonably contemplated to accrue to the Sand Company if the contract had been completed according to its terms.

The rule for the measure of damages for breach of contract prescribed by section 2852, Rev. Laws 1910, is as follows:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin."

This court, in First National Building Co. v. Vandenberg, 29 Okla. 583, 119 Pac. 224, recognizes the rule that anticipated profits may be recoverable in an action for damages for breach of a building contract, and quotes with approval from the opinion of the Supreme Court in United States v. Behan, 110

U. S. 339, 4 Sup. Ct. 81, 28 L. Ed. 168, as follows:

"The two heads of damages are distinct, though closely related. When profits are sought, a recovery for outlay is included and something more. That something more is the profits. If the outlay equals or exceeds the amount to be received, of course there can be no profits. When a party injured by the stoppage of a contract elects to rescind it, then, it is true, he cannot recover any damages for a breach of the contract, either for outlay or for loss of profits; he recovers the value of his services actually performed as upon a quantum meruit. There is then no question of losses or profits. But when he elects to go for damages for the breach of the contract, the first and most obvious damage to be shown is the amount which he has been induced to expend on the faith of the contract, including a fair allowance for his own time and services. If he chooses to go further, and claims for the loss of anticipated profits, he may do so, subject to the rules of law as to the character of profits which may be thus claimed."

Again in Ft. S. & W. R. Co. v. Williams, 30 Okla. 726, at 731, 121 Pac. 275, 277 (40 L. R. A. [N. S.] 494), the court, in discussing this character of damage, said:

"Where it reasonably appears that a party has been damaged, and that such damage is the direct result of the breach, then a recovery is justified. The next step is to ascertain how much will reasonably compensate the injured party. This should be computed by the plainest, easiest, and most accurate measure which will do justice in the premises, and if from the conditions in the contract, and the nature of the breach, it reasonably appears that the extent or amount of damages may be more readily, easily, correctly, and justly ascertained by applying the loss of profits as a measure, if it is evident that profits were lost and the amount thereof can be calculated with reasonable accuracy, then such profits are the true measure (of damages) to be applied. In such cases, however, it should appear evident that profits were lost. The amount may be estimated with only reasonable accuracy; but the fact that profits were lost should require stricter proof."

The statute above quoted forbids the recovery of damages "which are not clearly ascertainable in both their nature and origin."

These decisions recognize the doctrine that contemplated profits are proper elements of damage in an action for breach of the character of contract involved in this action, but the decisions, as well as the statute, require that the nature and amount of such profits must be reasonably ascertainable, and it must be made to appear that they are the natural and proximate consequence of the original breach of the contract, and not speculative and contingent. Now what was the nature of the profits for loss of which the Sand Company was permitted to recover, as evidenced by the verdict of the jury, on account of the failure to construct the switch by the 15th of December, 1911, as stipulated in the contract? It is admitted in the evidence that the Sand Company was ready to ship and deliver sand and gravel, and that there was demand for this product at Muskogee, and that certain contractors were using certain quantities of sand and gravel in work under construction, and that some of these made inquiry of the Sand Company for its product between December 15, 1911, and February 24, 1912, but it does not appear that the Sand Company had a contract to deliver any quantity of sand or gravel to any one of these contractors, and was prevented from filling such contract by reason of the default in construction of the switch. The amount of sand and gravel that would have been sold, and the amount of profit that would have been realized therefrom if the switch had been completed, as provided in the original contract, were entirely speculative and contingent. What amount any one of these contractors would have purchased and paid for, under the testimony, is altogether uncertain. Therefore it does not appear that the element of damage accruing from the contemplated profits, in the instant case, can be reasonably ascertained. It cannot be said with any degree of certainty what amount of profits were proximately lost on account of the breach of the contract. The amount of damage due to loss of profits included in the verdict must have been estimated by guess on the part of the jury. The amount of the verdict in excess of $3,000 and interest was damage for loss of profits. This amount can be easily ascertained by deducting the $3,000 and interest from the date of its payment from the amount of the verdict. The testimony as to the date of payment of the sums making up the $3,000 is not contradicted. It is that $1,000 was paid November 4, 1911, $400 on November 7, $600 November 9, and $1,000 on December 22, 1911.

It is argued that the Sand Company paid the $3,000 to the Muskogee Company for the construction of the switch and that the People's Electric Company constructed the switch and charged the cost thereof to the Muskogee Company; that the $3,000 paid by the Sand Company was used for the very purpose for which it was paid, and therefore the Muskogee Company is not liable in this action. This argument overlooks the fact that under the terms of the contract between the Sand Company and the Muskogee Com-

pany the $3,000 was paid as an advance, and was to be returned to the Sand Company by credits on its freight bills, and that under the new contract, which it was compelled to enter into with the People's Electric Railway Company in order to get the switch, that company refused to account to the Sand Company for this $3,000, for the reason, presumably, that it had accounted for it in its deal with the Muskogee Company in taking over the construction contract. While it is true that the Sand Company finally got the switch by virtue of its new contract with the People's Electric Railway Company, the $3,000 was not returned to it, as the Muskogee Company agreed should be done. Clearly the Sand Company was proximately and directly injured by the breach of the contract by the Muskogee Company to the extent of this $3,000 and interest thereon. This amount of damage is recognized by the Muskogee Company in its requested instruction No. 1, set out above. Having asked the trial court to charge the jury that it was liable in this sum, it cannot now be heard to deny its liability in this amount.

We are constrained to hold that the other elements of damage, those for anticipated profits, are too uncertain, contingent, and speculative to be included in the damages for the breach of the contract, under the testimony given in this case, and that these ought to be eliminated from the verdict, and, when so eliminated, the verdict ought to stand. This conclusion obviates the necessity of the consideration of the other assignments of error, since it might be admitted that those assignments were well taken, and the conclusion announced above would be in no way affected thereby.

If, within 30 days from this date, the defendant in error file a remittitur in this court for the sum that the verdict exceeds the $3,000 and interest at 6 per cent. per annum from the date of its payment, then the judgment of the trial court should be affirmed; otherwise it should be reversed and remanded for a new trial.

By the Court: It is so ordered.