## OKLAHOMA UNION RAILWAY CO. v. HAINEY.

No. 14395—Opinion Filed Dec. 18, 1923.

Rehearing Denied Jan. 15, 1924.

(Syllabus.)

**1. Negligence — Proximate Cause — Jury Question.**

In a suit for personal injuries, the question of whether or not defendant's negligence is the proximate cause of the injury sustained should be left to the jury where the evidence is conflicting or where men of ordinary intelligence will differ as to the effect of the evidence on the point.

**2. Trial—Right to Directed Verdict.**

It is only when the evidence, with all the inferences that the jury can reasonably draw therefrom, is insufficient to support a verdict that the court is authorized to direct a verdict for the defendant.

**3. Trial—Instructions — Construction as a Whole.**

The instructions of the court should be considered as a whole and in their entirety, and no particular paragraph thereof should be singled out and given an interpretation which some other paragraph clearly shows was not intended to be placed upon it.

**4. Railroads — Personal Injuries to Passenger—Validity of Release—Fraud.**

Record examined, and held, the evidence was sufficient to submit to the jury the question of whether the release was obtained by fraud.

Error from District Court, Tulsa County: W. B. Williams, Judge.

Action by Virginia Hainey against the Oklahoma Union Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Biddison & Campbell and J. H. Grant, for plaintiff in error.

A. E. Montgomery, for defendant in error.

McNEILL, J. This action was commenced in the district court of Tulsa county by Virginia Hainey against the Oklahoma Union Railway Company to recover damages for personal injuries resulting from being struck by a car of the company. It was alleged

the car was running at approximately 25 miles per hour, and plaintiff was standing at the station of Parenthia for the purpose of boarding a car, and the motorman operating the car waived his hand for plaintiff to cross the track in front of said car, and the plaintiff, believing the motorman knew the speed of his car and believing he had the same under control, attempted to cross defendant's track as directed by the motorman, and while crossing said track was struck by said car. It is alleged the company was negligent in the motorman motioning said plaintiff to cross said track and in failing to have control of the car.

To this petition, the defendant answered by general denial and alleging contributory negligence, and a further plea that plaintiff and defendant had compromised and settled said claim. Defendant filed a reply denying she was guilty of contributory negligence, and pleaded the contract of settlement was obtained by duress and fraud, and her signature was obtained while she was irrational and at a time her mental condition was such she did not realize it was a settlement. The case was tried to a jury, and a verdict returned in favor of plaintiff in the sum of $3,000. From said judgment, the defendant has appealed.

The plaintiff, to substantiate her cause of action, testified, in substance, that she lived in Tulsa, and on the 14th day of September, 1919, boarded the interurban at Tulsa for Parenthia, a station between Tulsa and Sapulpa, arriving there about 11 o'clock. She visited in the neighborhood, and returned to Parenthia about 1:30 to take a car to Tulsa. That she had been standing near the track about ten minutes waiting for a car, when she saw a car approach. The motorman and another party whom she recognized were standing in the vestibule near the center of the car laughing, and when the car was about 50 feet from her, the motorman looked straight at her, and raised his right hand and motioned the plaintiff to cross the track. The plaintiff started across the track, and before she reached the opposite side was struck by the car. That the man talking to the motorman was an electrician, by the name of Kinslow, who had done some work on her house. He was not an employe of the company, but was standing close to and a little back of the motorman. She testified upon cross-examination there were two people in the vestibule where the motorman was, the motorman and the electrician, and the motorman motioned with his left hand. Parenthia is a stop station. There is a box car used as a "bunk" car, which according to other witnesses was 24 feet from the track or platform. In front of the box car is a seat with an awning for passengers. To the southwest of the box car is a substation and power house, the north end of which is almost south of the "bunk" car, but several feet farther west and closer to the track. It is 16 feet from the center of the track upon which this box car used as a substation is situated to the center of the main track. There is a small platform for the use of passengers that is four feet wide and eight feet long next to the rails.

The motorman testified, in substance, that he had blown the whistle before coming to the station, and was running about 25 or 30 miles per hour, and when he first saw plaintiff she was running toward the track and about eight feet from the track; that he did not motion her to cross, and there was no occasion for him to do so, because she was on the right side of the track; that he was in the front right-hand corner of the car in the cab that was used for motormen. He was not talking to any one. This was a flag station, and cars did not stop at the station unless they were flagged. He was approximately 30 feet from where the plaintiff crossed the track before he saw her, and he thought she was going to stop, and when he was about 15 feet from her, he noticed she was not going to stop, but was attempting to cross the track. When he first saw her, he gave the car the straight air to make a regular stop, and when he saw her going across the track he threw the car into emergency; that he ran 130 feet before he stopped, after striking her.

Mr. Kinslow, referred to as the electrician, testified for the defendant that he knew plaintiff and was riding in the front vestibule of the car, and standing in the door to the cab to the left of the motorman. He testified he had not been talking to the motorman; that when he first saw the plaintiff she was running, and was six or eight feet from the track. That she was perhaps 12 feet from the car when she started to cross the track. He testified that he did not see the motorman motion or signal the plaintiff to cross the track. Witness on cross-examination testified that he noticed the young lady come from behind the station building and proceed toward the track.

Mr. Brown, a witness for defendant, testified that he was on the interurban, in the front end of the car, and three or four feet west of the motorman, sitting on a trunk. The motorman was in the northeast corner of the car and he was in the northwest corner and the car was 35 or 40 feet from the station when he saw the plaintiff about four or five feet from the track

walking toward the track; he thought she was going to stop, and she went up there and hesitated a minute, and started across the track. The car was only about 15 feet from her when she started to step on the track. On cross-examination he stated she was not over 30 feet from the car when he first saw her, and the plaintiff had not reached the platform.

Mr. Tedford, who was substation operator at the station, testified that plaintiff had been sitting in front of the substation. He saw plaintiff jump up and go out toward the track, and instead of stopping at the platform, she ran across in front of the car; that he could not see where the car was when she started across the track.

Mr. Dufford testified that he was on the rear of the interurban; he was looking out of the door, and he saw the plaintiff run toward the track; she seemed to hesitate for a second, then went on across the track. He stated he saw the woman come from behind the substation: that she was running all the time she was within his view; he did not see her walk any.

Mr. Fowlston testified that he was on the rear end of the car; he saw the plaintiff coming out from behind the box car substation running. He was about 100 feet from the plaintiff when he first saw her.

For reversal, it is first contended the evidence is insufficient to go to the jury upon the question of defendant's negligence, and wholly fails to support the verdict of the jury. The plaintiff in error contends that the testimony of the plaintiff herself is so unreasonable and inconsistent and so opposed by the undisputed circumstances and evidence as to be unworthy of credit and justifying the court to direct a verdict or to vacate the verdict based upon said evidence. Plaintiff in error asserts that a mathematical calculation discloses that a car going 25 miles per hour will travel 36 feet in a second, and when traveling at the rate of 30 miles per hour will travel 44 feet per second. In regard to the rate of speed the car was traveling, the evidence is conflicting, but most of the witnesses estimated the speed at from 25 to 30 miles per hour. None of the witnesses on behalf of the defendant purported to see the plaintiff until the front end of the car was approximately 50 feet from where the plaintiff was struck. Some of them, not until the car was within 30 feet of this point. So, if the car was going 25 or 30 miles per hour, less than two seconds transpired between the time the plaintiff saw the car and the time she was struck, and less than one second

from the time the motorman saw the plaintiff and the time the car struck her.

If we accept some of the witnesses' statements that the car was 50 feet from the station when witnesses first saw her, it would be less than two seconds from that time until the plaintiff was struck. It is almost impossible to take the testimony of any witness and give it a literal construction without coming to the conclusion that the same is erroneous. For instance, the witness Brown, a disinterested witness, testified the car was about 30 feet from plaintiff when he first saw her, not to exceed 40 feet, and plaintiff was walking toward the track and she stopped a minute before attempting to cross the track. The car would travel 40 feet in a second, so it would be impossible for plaintiff to stop a minute or even a second before crossing the track, and be struck by the car.

As to the two witnesses from the rear of the car, according to their evidence and the plat that had been introduced in evidence, the plaintiff was approximately 15 feet or more from the track when they first saw her, and according to all the evidence plaintiff was on the west side of the track when struck. The plaintiff was practically 20 feet from the place she was struck, and she traveled that distance while the train, going approximately 30 miles an hour, traveled 50 feet, and they testified plaintiff stopped and hesitated about the time she reached the platform before going on the track. This whole transaction occurred in less than two seconds, and perhaps in one second. Mr. Brown, a witness for defendant, stated plaintiff was walking, the other witness for defendant stated she was running, but most of the witnesses admit plaintiff stopped or hesitated as she reached the platform.

The plaintiff states that she was standing close to the track, and when the motorman was about a car's length or 50 feet from her, he motioned for her to cross the track, and she attempted to cross. Exactly what place on the track she was when struck, she did not remember. The plaintiff's testimony in regard to the motorman and electrician being in the front of the car near the center is substantially corroborated by the motorman and the electrician. The evidence disclosed there was only about three or four feet distance between the place where Mr. Brown was standing and the motorman; in other words, each person was a foot and a half from the center of the car. The electrician was standing in the doorway and immediately back and to the side of the motorman. We think the evidence is conflicting and

presented a question of fact for the consideration of the jury, and it is for the jury to determine under all the evidence and the facts whether the defendant company was guilty of negligence.

The plaintiff in error next argues the fifth and sixth assignments of error. The court in the instructions stated the issues as presented by the pleadings and advised the jury the plaintiff alleged the contract of settlement was obtained by fraud, while she was irrational, and by threats that she would be placed out of the hospital if she did not sign the same. It is contended there was no evidence that there was any threat made to put plaintiff out of the hospital if she failed to sign the contract of settlement. The defendant requested an instruction that there was no evidence to support the allegation that threats were made that plaintiff would be ejected from the hospital unless she signed the contract of settlement.

The court in instructions Nos. 14 and 15 advised the jury, in substance, that the burden of proof was upon the plaintiff to establish that the contract of settlement was procured while she was in such mental condition that she did not understand the purport, effect, and meaning of the settlement, and the bare preponderance was not sufficient, but the evidence of fraud or mental condition must be clear and convincing. The court, also, in instruction No. 15, properly advised the jury regarding the release or settlement, and no complaint is made of that instruction. The court in instruction No. 18 advised the jury they should not single out any single instruction or paragraph, but should consider the instructions as a whole, and should consider each instruction in connection with the others given, and to apply the instructions in their entirety to the evidence before the jury. When these instructions are considered together, we think there was no error in giving the instructions nor in refusing the requested instructions.

It is next contended that the plaintiff testified relating some internal injuries and these were of such nature they could only be proven by testimony of skilled physicians and the plaintiff only produced two osteopathic physicians, neither of whom pretended to testify that the injuries were the result of the accident. The evidence relating to these injuries or a great portion of the same was introduced without objection. Under these circumstances, no prejudicial error can be predicated thereon.

The next assignment of error argued presents the sufficiency of the evidence to set aside the compromise executed by the plaintiff to the defendant. The accident occurred on September 14th, and the release was executed September 19th, or five days thereafter, while plaintiff was in the hospital and in bed. All of the witnesses admit that the plaintiff was irrational for over 24 hours, and some for 48 hours, and there is testimony in the record that she was irrational for a week or ten days. She was in the hospital a period of two weeks and two days and in bed all that time. She was then removed to a private home, and was there confined in bed for a period of two weeks. She was on crutches for approximately two months. The evidence disclosed that one of her ears was almost, or a great portion of the same, severed from her head, and her head bruised, her shoulder either bruised or broken, and her ankle sprained or bruised. Under this state of the record, we think there is sufficient evidence to submit this case to the jury under the rule announced in St. Louis & S. F. Ry. Co. v. Richards, 23 Okla. 256, 102 Pac. 99. The instructions fairly submitted the issues to the jury, and from an examination of the entire record, the court is of the opinion there was sufficient evidence to support the verdict rendered thereon.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and MASON, JJ., concur.