**BAKER & STRAWN v. MILLER & JONES BROS.**

No. 14997—Opinion Filed Jan. 20, 1925.

Rehearing Denied April 7, 1925.

**1. Damages—Contract—Breach — Damages Recoverable.**

Damages claimed for breach of contract cannot be recovered unless they are clearly ascertainable, both in their nature and origin, and it must be made to appear that they are the natural and proximate consequence of the breach of the contract, and not speculative and contingent.

**2. Same—Statute—"Clearly Ascertainable" —Remote Profits—Contract to Drill Oil Well.**

The words "clearly" and "ascertainable," used in section 5976, Comp. Stat. 1921, taken together, mean without obscurity, obstruction, confusion, or uncertainty, and the damage claimed must be made reasonably certain, and where, as in the instant case, the profits sought to be recovered are dependent upon the happening of certain contingencies and are dependent upon luck or chance, they are too remote, speculative, and uncertain to entitle plaintiffs to recover.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Carter County: Asa E. Walden, Judge.

Action by Miller & Jones Brothers, a co-partnership, against Baker & Strawn, a co-partnership, to recover damages for breach of contract. Judgment for plaintiffs. Defendants bring error. Reversed.

Fitzpatrick & O'Dell and J. A. Bass, for plaintiffs in error.

Cruce & Potter, for defendants in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Carter county, Okla., by Miller and Jones Brothers, a copartnership, defendants in error, plaintiffs below, against Baker and Strawn, a copartnership, plaintiffs in error, defendants below, to recover damages for breach of contract to drill two oil and gas wells in Carter county.

The parties will be referred to in this opinion as plaintiffs and defendants, as they appeared in the lower court.

In the original petition it is alleged that under a written contract the plaintiffs were to drill two oil and gas wells to the depth of 2,250 feet each, for which they were to be paid the sum of $4.25 per foot; that they drilled one well and were paid therefor, and that defendants refused to permit them to drill the second well under the contract, although they were ready and willing to drill the same, and that they were damaged thereby in the sum of $4,000 for loss of time and the rental value of their drilling machinery, and that they were damaged in the additional sum of $4,500 loss of profits by virtue of breach of the contract by the defendants' refusal to permit them to drill the second well or in the total sum of $8,500.

Defendants, by their pleading, compelled the plaintiffs to elect upon which cause of action they would seek to recover, and the plaintiffs, in open court, elected to rely solely upon the count alleging damages of $2 per foot, or a total of $4,500 as profits, which they claimed they would have realized if they had been permitted to drill the second well, and dismissed as to the other count, alleging damages in the sum of $4,000 for delay in the use of the drilling outfit.

The defendants answered, admitting the making of the contract, but claim that, by mutual consent and agreement, the time for the drilling of the second well was extended to a later time on account that the unfavorable condition of development and of the oil market would not justify the drilling of the same.

The plaintiffs filed their reply in the nature of a general denial.

Upon these issues the cause proceeded to

trial and at the close of the testimony on part of the plaintiffs, the defendants demurred to the sufficiency of the evidence in that they had not established a cause of action against the defendants, and that the proof did not establish the proper measure of damages, which demurrer was overruled by the court, and exception reserved by the defendants.

The defendants introduced their evidence and at the close of all the evidence in the case, the defendants requested the court to instruct a verdict in favor of the defendants, and against the plaintiffs, which request was refused. Then, the defendants further requested the court to charge the jury that loss of profit, under the testimony in the case, was not the true measure of damage, which was also refused. To both refusals of the court the defendants reserved exceptions.

The trial resulted in a verdict in favor of the plaintiffs in the sum of $4,000.

The defendants filed a motion for judgment notwithstanding the verdict, which motion was overruled, and exception reserved.

Motion for new trial was filed, heard, and overruled, and judgment pronounced upon the verdict of the jury in favor of the plaintiffs and against the defendants in the sum of $4,000, with interest from November 1, 1923, until paid, and for costs, and the cause comes regularly upon appeal by defendants from said judgment.

The attorneys for the defendants set up nine assignments of error for reversal of the judgment of the trial court, but content themselves with presenting argument upon said assignments under the following general heads:

"1. Damages must be clearly ascertainable both in their nature and origin before they will support a verdict and judgment.

"2. When the plaintiff's evidence shows only prospective and speculative damages, such evidence is not sufficient to support a verdict and judgment in favor of the plaintiffs.

"3. When there is no legal evidence reasonably tending to support the verdict of the jury, the verdict should be set aside.

"4. When the court bases his charge on an incorrect theory of the case, the verdict and judgment are erroneous, and should be set aside."

At the very beginning of this action the defendants contended that the plaintiffs should elect which measure of damage they would stand upon, and the court sustained

their contention, whereupon plaintiffs elected to sue for loss of profits, and the attorneys for defendants, in their brief, say:

"Waiving other grounds for the relief sought, the defendants here rely upon the error of the trial court in allowing the case to be tried on the theory that the loss of profits was the measure of damage. Defendants at every stage of the litigation have insisted, and now insist, that the rental value of the tools and machinery during the period of idleness, for which defendants were responsible, is the true measure of damage and that the loss of profits under a contract of this nature are not clearly ascertainable in their nature and origin, and, therefore, not the measure of damages."

And the attorneys for plaintiffs, in their brief, state the matter to be decided by this court as follows:

"Plaintiffs in error made no serious defense to their action in breaching the contract, but contended that because the amount of expense in drilling the well might be problematical, therefore the entire profit must necessarily be held to be so speculative as not to be subject of recovery, and this appears to be the point for this court to decide."

Then, counsel for all parties agree that the question to be determined here is whether the court erred in permitting the plaintiffs to recover in this action upon the theory that the loss of profits was the true measure of damages, and in permitting the plaintiffs, over the objection of the defendants, to prove the cost of drilling the first well and other wells in that community, and the average profits derived by the drillers from the drilling of said wells. The defendants, at every stage of the trial of the case, objected to the plaintiffs being allowed to recover upon this theory of the case. They forced plaintiffs to elect upon which count they would seek to recover. They objected to the introduction of evidence upon this issue. They demurred to the evidence at the close of the plaintiffs' case. They requested a peremptory instruction in their favor. They objected and excepted to the giving of instruction by the court, submitting this as the true measure of damages in this case. They raised the question again on motion for judgment notwithstanding the verdict. They raised it in the motion for new trial, and in their petition in error, and in the brief of their counsel, and it becomes then the sole and only question for decision by this court on appeal. The evidence of the plaintiffs, themselves, is to the effect that the profits from drilling wells in that section of country was about $2 per foot, based upon their experi-

ence in drilling other wells, themselves, and knowing the cost of wells being drilled by others; that the amount of profit of drilling oil and gas wells depended largely upon luck or chance; that the profit could not be estimated until after they were through and moved the tools off from the well; that they might have several fishing jobs, which would cost them at the rate of $75 per day, and they might have one or more such jobs in any one well, and that there was no way of knowing when they started to drill a well how many fishing jobs they would have; that frequently drilling contractors lost money on the well they were drilling, and they sometimes went "broke" on one well, and they realized that, under this contract, they took the chances of losing money and of losing more than they could make on the well; that they could get no insurance against fishing jobs; that it might happen after they were down 2,000 feet they would have a crooked hole, or that they might lose tools in a hole that could not be cleared, and under such conditions and circumstances they would have to lose the entire hole and start and drill a new one; that the only way they could estimate the probable profit was by the average profit made on other wells; that the drilling of oil wells is the most speculative business in the world, and their hope of profit depended upon whether or not they were lucky, and that in the happening of certain contingencies they might be robbed of all the profits of one well and it would "break" them; that the second well, which they were prevented from drilling, was located about a quarter of a mile from the completed well; that the logs of any two wells drilled in the field, where these wells were contracted to be drilled, known as the Hewitt Field, were not the same; that the dip in the limestone made the drilling very hazardous; that soon after the first well was completed they got another contract and moved their machinery to the Robinson Field, where they began drilling another well, which they completed at a large profit to themselves. This, in effect, is the summary of the testimony upon the question of what profits they might expect, and the uncertainties of whether there would be any profit or not in the drilling of any one given well, taken from the personal testimony of the plaintiffs.

Section 5976, Comp. Stat. 1921, provides as follows:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin."

Then, under the above quoted statute, the damages claimed must be clearly ascertainable in both their nature and origin, and we think that the contention of attorneys for defendants, in their brief, that the two words, "clearly" and "ascertainable," taken together, mean without obscurity, obstruction, confusion, or uncertainty, is correct, and that the damage claimed must be made sure, certain, fixed, established, determined, and settled. The question to be determined here is whether the damages in this case under the evidence of the plaintiffs, themselves, are not too remote, contingent, and speculative, and whether, under the evidence, the court and jury could measure the damages with reasonable certainty, so as to come within the definition of this court of what prospective profits are recoverable in an action for damages in the case of Muskogee Co. v. Yahola Sand Co., 60 Okla. 196, 159 Pac. 898, wherein the court held that the damages sought in that case were too remote, contingent, and speculative, and his court, in the case of Terrell Co. v. Davis et al., 77 Okla. 302, 188 Pac. 676, decided by Justice Johnson, where plaintiffs sought to recover damages for breach of a drilling contract on account of the enforced idleness of a string of tools of plaintiffs for a period of time, held that the true measure of damages was the rental value of the tools for such period. And, while in the last above quoted case, the court did not determine that this was the only measure of damages, yet we are of the opinion that, under the testimony in this case, the plaintiffs should have elected to stand upon the count set up in their original petition, whereby they sought to recover damages for the rental value of the tools, and that they elected to stand upon the wrong count as, under their own testimony, the amount of prospective profit that they might have made out of drilling the second well was too remote, uncertain, indefinite, contingent, and speculative and, under the evidence, the court and jury could not clearly ascertain the amount of damages plaintiffs might recover from its nature and origin, as required by the statute of this state. The amount found by the jury upon the testimony in this case, at best, could only be a matter of surmise, conjecture, and guesswork, and as a matter of law, based upon the record and testimony in this case, we are forced to conclude that the damages

awarded in this case by the jury should not be allowed to stand, and we are clearly of the opinion that the court committed error of law in submitting the case to the jury upon this count of the petition, and that the judgment of the trial court should be and is hereby reversed.

By the Court: It is so ordered.

Note.—See under (1) 17 C. J. pp. 744, 754. 755. 780; (2) 17 pp. 790, 791.