CHORN v. WILLIAMS et al.

*99 P. 2d 1036.*

No. 29206. Jan. 30, 1940.

Rehearing Denied March 12, 1940.

W. B. Wall and J. Fred Green, both of Sallisaw, for plaintiff in error.

Joseph R. Brown, of Ft. Smith, Ark., and Frye & Patterson, of Sallisaw, for defendants in error.

PER CURIAM. The petition filed by the plaintiff alleges a contract in which the plaintiff agreed to assume charge of certain stockyards at the end of Garrison avenue in Ft. Smith, Ark., and certain property in Sequoyah county, Okla.

The contract was evidenced by three written agreements. The first petition filed by the plaintiff revealed the fact that Ed Wareham was a member of a partnership that entered into the contract, and a demurrer was sustained to said petition. Ed Wareham had not been made a party to the proceedings. Thereupon plaintiff filed an amended petition in which he alleged that he, together with one Ed Wareham, entered into a contract with the defendants for leasing of the stockyards involved in the litigation. In the second or amended petition Ed Wareham was made a party defendant. At the conclusion of the testimony offered by the plaintiff, the trial court sustained a demurrer to the evidence, and it is this order and judgment of which plaintiff complains. The defendants hereafter referred to are Williams and Beland, and defendant Wareham shall be referred to by name.

The sole question presented is the error of the court in sustaining the demurrer to the evidence.

The facts are substantially as follows: The plaintiff had been a cattleman for a number of years engaged in the buying and selling of livestock. On the 12th day of February, 1936, he, together with Ed Wareham, negotiated a contract which began the relationship of Chorn and Wareham with the defendants. This contract was in writing and provided, among other things, that Chorn and Wareham were to take charge of and operate the stockyards owned by the defendants at the west end of Garrison Avenue Bridge in Ft. Smith, Ark., and in Oklahoma in Sequoyah county. Certain schedules of yardage fees to be maintained by Chorn and Wareham were set out in said contract and it was provided therein that the profits from the operation of the yards were to be divided equally between Chorn and Wareham on the one hand and the defendants on the other. The contract was to cover a period of 25 years from its date. A second contract was entered into June 5, 1937, and by this second agreement there was established a trading account so that Chorn and Wareham could buy cattle. Certain schedules of yardage fees were again set up. Certain payments were to be made to the defendants for each head of stock kept and maintained in the said yards, and again it was provided that the profits were to be equally divided in a provision similar to the one made in the former contract, said division to be made periodically.

Finally, on September 4, 1937, another contract was entered into. In this contract it is recited:

"Lessees individually and jointly acknowledge that they have failed to carry out their part of the original lease agreement and agree that the original lease agreement, as well as this supplementary agreement, may be terminated at any time by lessors, if the lessees, or either of them, shall fail to comply with the terms of this supplementary agreement. And if lessors terminate said lease and supplementary agreement, because of lessees further failure to comply therewith, lessees agree, upon three days' notice by lessors, to vacate forthwith the premises they now occupy under said lease, and surrender same to lessors."

Thereafter the said Chorn and Wareham were each to receive $200 per month for their services. There was also a provision therein that out of the profits certain payments were to be made and that the profits were then to be divided equally between Chorn and Wareham and the defendants.

A disagreement arose between the parties, and on January 1, 1938, the yards were taken over by the defendants, and this action by the plaintiff Chorn followed, based upon a breach of the contract. The evidence offered consisted chiefly of the testimony of the plaintiff Chorn and an auditor or bookkeeper offered by the defendants and deals chiefly with the transactions covered by the last contract above referred to and the contract executed June 5, 1937. It is needless to review the details of all of the evidence. The auditor and bookkeeper for the defendants gave evidence

which disclosed that from the operation of said stockyards and the trading account from the time of taking over of the contract by Chorn and Wareham there was a total loss of approximately $3,800. A great deal of evidence offered by the plaintiff was in an apparent effort to discover a profit in what was known as the stockyards account, separate and distinct from the trading account. These two separate accounts were set up on the books of said defendants and for a time were under the operation and control of the plaintiff Chorn and the defendant Wareham as partners. When all of the testimony is reviewed, the fact remains that the evidence is uncontradicted that there was a total loss from the operation under the contract. Plaintiff bases his right to damages on the assumption that he placed a great amount of money in the project and that if he had been allowed to proceed for the remainder of the time of the contract, a period of approximately 23 years, certain profits would have been made; while defendants assert a total failure to comply with the terms of the contract.

We are of the opinion that there is no competent evidence reasonably tending to sustain an action in damages. Plaintiff elected to seek recovery for damages for the breach of the contract. The burden was on the plaintiff to establish by competent evidence damage by law resulting to him. Where the evidence fails to establish a right of recovery in favor of the plaintiff, a demurrer thereto should be sustained. Oklahoma Union Railway Co. v. Hainey, 96 Okla. 217, 222 P. 243; Kramer v. Nichols-Chandler Home Bldg. and Brokerage Co., 93 Okla. 227, 220 P. 338; Kansas City Southern Ry. Co. v. Hoyle, 185 Okla. 211, 90 P. 2d 1042. Damages claimed for the breach of a contract cannot be recovered unless they are clearly ascertainable, both in their nature and origin, and it must be made to appear that they are the natural and proximate consequence of a breach of the contract and not speculative and contingent. Davies v. Sutherland, 123 Okla. 149, 256 P. 32; Muskogee Company v. Yahola Sand Company, 60 Okla. 196, 159

P. 898; Baker & Strawn v. Miller & Jones Bros., 109 Okla. 184, 235 P. 476; Bokoshe Smokeless Coal Co. v. Bray, 55 Okla. 446, 155 P. 226; American Ins. Co. of N. J. v. Blake, 173 Okla. 598, 49 P. 2d 506. Uncertainty as to the amount of damages does not prevent recovery, but uncertainty as to whether any benefit or gain would have been derived at all does bar a claim for damages. Bishop-Babcock-Becker Co. v. Estes Drug Co., 63 Okla. 117, 163 P. 276.

Since the only direct and positive testimony in the record discloses that the business had sustained a loss since its inception, we hold that there was no competent evidence reasonably tending to support the allegation of damages by the alleged breach of contract, under the facts and circumstances of the case. The trial court did not err in sustaining a demurrer to the evidence. Judgment affirmed.

RILEY, CORN, GIBSON, HURST, and DANNER, JJ., concur.