**LARRANCE TANK CORPORATION, a Corporation, Plaintiff in Error,**

v.

**H. R. BURROUGH, Defendant in Error.**

**No. 42526.**

Supreme Court of Oklahoma.

Nov. 3, 1970.

Nicklas, Parrish & Saenz by W. F. Parrish, Jr., Lawton, for plaintiff in error.

Hal Welch, Hugo, for defendant in error.

DAVISON, Justice.

Larrance Tank Corporation (defendant below) appeals from a judgment rendered on jury verdict in favor of H. R. Burrough (plaintiff below) for the sum of $2501.25, including interest. We will refer to the parties by their trial court designation.

Plaintiff's action was to recover the value of gasoline that had escaped from an allegedly defective tank that defendant had sold to plaintiff. His petition alleged a breach of warranty, and loss of 150 gallons per week for 60 weeks, at 22 cents per gallon, and additional expense of $167.00 incurred in removing and reinstalling the tank for a total of $2147.00. Defendant denied the tank was defective and sought recovery of $185.00 as expense of picking up the tank, testing it, and returning it to plaintiff.

There appears to be no dispute concerning certain facts. Plaintiff's filling station was located in Hugo, Oklahoma, and defendant's tank manufacturing business was in Lawton, Oklahoma. A short time prior to March 20, 1963, plaintiff orally placed an order with defendant for the purchase of two 10,000 gallon tanks for use as underground gasoline storage tanks. The tanks were constructed from quarter-inch steel sheets, and were 96 inches in diameter and 27 feet in length. They were delivered by defendant to plaintiff on March 20, 1963, and placed end to end in an excavation prepared by plaintiff, with about a two foot space between the ends. In this space plaintiff constructed a vertical board "well," which he covered with a five gallon can. Plaintiff then covered the tanks and "well" so that they were covered with about a 2½ foot layer of sand and dirt, topped with crushed rock. One tank was used as storage for regular and the other for ethyl gasoline. The first delivery of regular

gasoline to plaintiff was on March 23, 1963, the next delivery was on April 28, 1963, and thereafter deliveries were about a week or less apart, until June 20, 1964, when a total of 252,302 gallons of regular gasoline had been delivered.

Plaintiff and two witnesses (one an employee and the other a former employee) testified that from the initial delivery, the number of gallons of regular gas delivered did not agree with the gallons, shown by the pumps to have been sold and the amount remaining in the tank at periodic gauging. Their collective testimony was that there was a loss of about 150 gallons per week.

Plaintiff's testimony was that in June, 1964, the covering was removed from the "well" between the tanks and that 5 feet of gasoline was standing in the well. His testimony and that of other witnesses was that, upon further excavation, it was found that a seam in the end of the tank had not been properly welded for about ¼ of an inch, and gasoline was running from the seam. Further testimony described how gasoline flowed back into the excavation from the adjoining soil after the tank was emptied and removed, and that gasoline saturated soil was found in the bottom of a 4 foot hole dug 17 feet from the tank excavation.

Plaintiff notified defendant on June 23, 1964, as to the condition of the tank, and defendant picked up and took the tank to its plant in Lawton, Oklahoma. Defendant claimed and produced testimony that it tested the tank and found no leak, and so notified plaintiff. Defendant then returned the tank to plaintiff, who replaced it in the hole and used it for gasoline storage without any further complaint. Plaintiff stated that he could not see where the tank had been rewelded because it was covered with tar. Defendant's witness stated no tar was applied by defendant. Defendant billed plaintiff for the expense of picking up and returning the tank.

On October 1, 1965, plaintiff filed the present action. The jury returned a verdict in favor of plaintiff for the full amount sued for.

Defendant contends that plaintiff failed to prove any warranty or breach of warranty, either express or implied.

Plaintiff testified in substance that he acquired a paper, from a source other than the defendant, bearing the name and location of defendant and reflecting the sizes, dimensions, and prices of underground gasoline tanks; that he called defendant by telephone and ordered two tanks of 10,000 gallon capacity each, 96 inches in diameter and 27 feet long, specifying that he wanted the type of tank that was to be buried. No point is raised that plaintiff ordered any different tank for a use other than for storage for gasoline underground.

Plaintiff alleged that there was an implied warranty that the tanks were free from defects for the purposes for which they were designed, sold and purchased. The trial court instructed the jury on the law of implied warranty applicable to the circumstances. No objection was made to this instruction.

Our statute, 12A O.S.1961, § 2–315, of the Uniform Commercial Code provides as follows:

> "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

We find nothing in the "next section," Sec. 2–316, applicable to the present situation and the provisions of § 2–315 stand unaffected.

It is our conclusion that under the provisions of § 2–315 the evidence of plaintiff was sufficient to show that an implied warranty of fitness accompanied the sale of the tanks to plaintiff.

Defendant contends that the evidence shows that plaintiff's claim should be barred by reason of laches.

The grounds for this contention are that plaintiff delayed in reporting his loss of gasoline and that plaintiff ignored defendant's charge for picking up the tank, testing the same, and returning the tank.

This is an action at law and is not an action or proceeding in equity.

In 30A C.J.S. Equity § 113, p. 28, it is stated that the defense of laches is peculiar to courts of equity and that the defense of laches does not apply in actions at law.

We followed this rule of law in Van Antwerp v. Schultz, 203 Okl. 84, 217 P.2d 1034, and Burtrum v. Gomes, 207 Okl. 349, 249 P.2d 717, and held that laches, although a good defense in equity, is not a defense at law.

■ The defense of laches is not applicable in the present case.

Defendant further argues in a proposition related to the above contention that plaintiff's remedy was barred because he did not give defendant notice within a reasonable time after plaintiff should have discovered the alleged defect in the tank.

This contention is based upon 12A O.S. 1961, § 2–607(3) (a), which provides as follows:

"(3) Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; and"

■ No other authorities are cited in support of this proposition. The plaintiff did notify defendant immediately upon discovering the leak in the tank. There remains the question of whether the notification was within a "reasonable time" after plaintiff "should have discovered" the defect in the tank. In 12A O.S.1961, § 1–

204(2) it is stated that "What is a reasonable time for taking an action depends on the nature, purpose and circumstances of such action." Under the facts the defect in the tank was not one that was quickly discoverable. The large tank was buried under several feet of dirt and the evidence reflects that the gasoline was absorbed into the earth. There was also the problem of the accuracy of the gasoline deliveries from the compartments of the delivery truck, and of the gasoline pumps.

The question of whether plaintiff's notice to defendant of the defect was within a reasonable time after he "should have discovered" the defect was one of fact. No instructions to the jury were suggested or requested, and none were given on this proposition. Under the circumstances we cannot say as a matter of law, that plaintiff's remedy was barred.

Defendant further contends that plaintiff's evidence shows that plaintiff grossly failed to carry out his duty to mitigate damages.

Defendant argues that it was the duty of plaintiff to mitigate his damages and that he could not sit back and permit them to continue to accrue. Defendant cites Bailey v. J. L. Roebuck Co., 135 Okl. 216, 275 P. 329, in which it was held that where there was a breach of warranty the buyer must make reasonable exertions to render his injury as light as possible, but that a failure to do so goes only to the amount of recovery. In that case the trial was to the court, and although the buyer had established damages, the trial court entirely denied buyer's claim of damages. We reversed for a new trial, saying that the question as to whether the buyer had performed his duty, and, if not, how much his damage was enhanced thereby are questions of fact to be determined by the jury, or by the court in a trial without a jury.

The situation in the cited case is not the same as in the present case. In the instant case the trial was to the jury and the jury allowed the buyer damages for the full

amount. The question of plaintiff's duty to mitigate his damages was not presented to the jury. The trial court was not asked to give such an instruction and no instruction embodying this proposition was submitted to the trial judge.

In Consolidated Cut Stone Co. v. Seidenbach, 181 Okl. 578, 75 P.2d 442, the court held that the burden of proving that damages could have been reduced or minimized is on the party asserting it.

█ If the defendant believed that the evidence justified an instruction upon the duty of plaintiff to minimize his damages, then defendant should have requested an applicable instruction. Main v. Levine, 189 Okl. 564, 118 P.2d 252, 255, and Birchfield v. Eeds, 204 Okl. 240, 228 P.2d 642, 644.

In view of the circumstances and these authorities, the contention of defendant cannot be sustained.

Defendant further contends that plaintiff's evidence is so ambiguous and inconsistent that no reasonable man could find any part of it believable enough to base a verdict thereon, and that the plaintiff wholly failed to prove any damages sufficient to sustain a verdict for any amount.

Defendant relies upon some inconsistent testimony of plaintiff, including his statement that the amounts of gasoline were checked *weekly* when gas was delivered, when in fact the record of deliveries reflected that a little over a month elapsed between the first and second delivery. However, the record does reflect that after the second delivery the following deliveries were a week or less apart. We have examined all of these claimed conflicts in plaintiff's testimony. It is our belief that they do not seriously affect the credibility of plaintiff and his witnesses. The jury undoubtedly considered these in arriving at a verdict.

It is defendant's position that plaintiff's evidence as to damages was at most speculative, conjectural and based on surmise.

Defendant cites Great Western Motor Lines, Inc. v. Cozard, Okl., 417 P.2d 575, which holds that evidence of this nature will not support a recovery of damages.

From our examination of plaintiff's evidence we must conclude that it supports the conclusion that there was defect in the tank, consisting of an unwelded seam, and that plaintiff suffered a loss of gasoline. Plaintiff's testimony and that of his employees was that a comparison of gasoline deliveries, pump meter figures, and tank gauging, revealed a loss of 150 gallons per week. During the trial no objection was made to this manner or method of establishing the amount of gasoline lost.

Our statute, 23 O.S.1961, § 21, provides in part that, "No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their *nature* and *origin*." (emphasis supplied)

The evidence of plaintiff, supra, shows the nature and origin of his damages.

█ Admittedly, the amount of damages may not be based on mere speculation, conjecture, and surmise alone. But when a breach of a contractual obligation with resulting damages has once been established, the mere uncertainty as to the exact amount of damages will not preclude the right of recovery. It will be sufficient if the evidence shows the extent of the damages as a matter of just and reasonable inference. Chorn v. Williams, 186 Okl. 646, 99 P.2d 1036; Ash v. Charles F. Noble Oil & Gas Co., 96 Okl. 211, 223 P. 175; Firestone Tire & Rubber Co. v. Sheets, 178 Okl. 191, 62 P.2d 91; General Finance Corporation v. Dillon, 172 F.2d 924, 930 (10th Cir. 1949).

█ It is our conclusion that the plaintiff's evidence as to his damages was sufficient to require the submission of the fact issues to the jury.

The judgment is affirmed.

All Justices concur.