**CRYSCO OILFIELD SERVICES, INC.,
an Oklahoma corporation,
Plaintiff–Appellee,**

v.

**HUTCHISON–HAYES INTERNATIONAL, INC., a Texas corporation,
Defendant–Appellant.**

No. 89–6391.

United States Court of Appeals,
Tenth Circuit.

Sept. 7, 1990.

Before McKAY, MOORE and BRORBY, Circuit Judges.

McKAY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a). 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

## I. Facts

Defendant supplied plaintiff with machinery known as shale shakers for use in the oil well servicing business. The shale shakers did not work properly. Plaintiff sued defendant for breach of an implied warranty of fitness for a particular purpose and for violation of the Oklahoma Consumer Protection Act, 15 Okla.Stat. §§ 752–63 (1981).

At trial, defendant moved for a directed verdict on the implied warranty claim after plaintiff had presented its case in chief. The district court denied the motion. On September 22, 1989, the jury returned a verdict in favor of plaintiff on the implied warranty claim. Defendant now appeals the trial court's entry of judgment on the jury's verdict. Defendant claims that the trial court wrongfully denied its motion for a directed verdict at trial. We believe that a directed verdict was appropriate. Therefore, we reverse the case and remand to the district court.

## II. Discussion

█ In order to reverse the trial court's decision on a motion for directed verdict we must find that "the evidence points but one way and is susceptible to no reasonable inferences supporting the party [opposing the motion]; we must construe the evidence and inferences most favorably to the nonmoving party." *Zimmerman v. First Federal Sav. & Loan Ass'n*, 848 F.2d 1047, 1051 (10th Cir.1988). We believe that this high standard is met in this case. The facts are essentially undisputed by the parties. The real issue is whether the trial

J. William Conger and Laura Haag McConnell of Hartzog, Conger, Cason & Hargis, Oklahoma City, Okl., for defendant-appellant.

Gary L. Blevins of Stagner & Blevins Associates, Oklahoma City, Okl., for plaintiff-appellee.

court correctly interpreted the law in application to these facts. We believe that the trial court incorrectly interpreted the law.

█ Plaintiff's claim for an implied warranty of fitness for particular purpose is based on the Oklahoma statute adopting section 2–315 of the Uniform Commercial Code.

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

12A Okla.Stat. § 2–315 (1981). Oklahoma's adoption of the exact language of the UCC creates two separate requirements for a claim to arise under this section. First, the seller must know that the goods will be used for a "particular purpose." Second, the buyer must rely on the skill or judgment of the seller in selecting suitable goods. *See American Fertilizer Specialists, Inc. v. Wood,* 635 P.2d 592, 595 (Okla. 1981); *Collins Radio Co. of Dallas v. Bell,* 623 P.2d 1039, 1054 (Ct.App.Okla.1980); *Jackson v. Glasgow,* 622 P.2d 1088, 1090 (Ct.App.Okla.1980). We do not reach the second requirement because we hold that plaintiff did not use the shale shakers for a "particular purpose" as required by section 2–315.

█ The record indicates that the shale shakers were manufactured to be used in oil fields in precisely the manner used by plaintiff. We hold that the use of a good in the ordinary manner for which the good was manufactured does not satisfy section 2–315's requirement that the good be used for a "particular purpose." In a case in which we interpreted section 2–315, as adopted by Colorado, we pointed out that "[t]he statute distinguishes between an ordinary purpose giving rise to an implied

warranty of merchantability and a particular purpose giving rise to an implied warranty of fitness for a particular purpose." *Weir v. Federal Ins. Co.,* 811 F.2d 1387, 1393 (10th Cir.1987). In *Weir,* the plaintiffs purchased a clothes dryer and used it for drying clothes. We held:

> The jury in the present case was instructed that drying clothes could serve as the particular purpose that the Weirs had in mind in selecting the clothes dryer. It is obvious, however, that drying clothes is only the ordinary purpose of a clothes dryer.... Thus, the district judge erred in instructing the jury that drying clothes could be the "particular purpose" necessary to establish an implied warranty of fitness for a particular purpose.

*Id.* at 1393.

Thus, we have interpreted UCC section 2–315 to require a particular purpose as opposed to any ordinary purpose. This interpretation is supported by many other courts and by the leading commentators in this field. As White and Summers explain:

> Recently some courts have held that the 2–315 warranty as to fitness for a particular purpose may arise when the buyer's "specific use" is the same as the "general use" to which the goods under contract are usually put. We are wary of such cases. They apparently enlarge the scope of the 2–315 warranty beyond the intent of the drafters.

1 J. White & R. Summers, *Uniform Commercial Code* § 9–10 at 481 n. 1 (3d ed. 1988) (citations omitted). White and Summers then go on to cite a string of cases adopting the view that section 2–315 does not apply where the buyer's "specific use" coincides with the "general use" of the goods. *Id.* We point out two cases clearly adopting this view. *See Intern. Petrol. Serv., Inc. v. S & N Well Serv.,* 230 Kan. 452, 639 P.2d 29, 37 (1982); *Duford v. Sears, Roebuck and Co.,* 833 F.2d 407, 413 (1st Cir.1987).[1]

---

1. Plaintiff rented the shale shakers to its customers. Plaintiff might argue that rental of the shakers was a sufficiently particular purpose to fall within section 2–315. However, we agree with the Eleventh Circuit's holding that leasing as opposed to selling is not a particular purpose under section 2–315. *See Royal Typewriter Co. v. Xerographic Supplies Corp.,* 719 F.2d 1092, 1100 (11th Cir.1983).

Having reviewed the Oklahoma cases in this area, we conclude that Oklahoma follows the position discussed above. For example, in *American Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592 (Okla.1981), the Supreme Court of Oklahoma considered a case involving a sale of fertilizer. In *Wood*, the seller contacted the buyer and suggested a new fertilizer mix for use on the buyer's pasture land. When the fertilizer failed to work, the buyer sued asserting implied warranties of merchantability and fitness for particular purpose. *See Wood*, 635 P.2d at 594–95.

In considering the buyer's warranty claims, the *Wood* court clearly recognized a distinction between the two implied warranties. Indeed, the court quoted the language of the comment to UCC section 2–315 regarding what is a "particular purpose." [2] *See id.* at 595 n. 8. Having considered carefully the UCC language, the court pointed out that the seller knew of the particular purpose for the fertilizer and that the buyer had relied on the seller's skill in selecting a proper mix. *Id.* at 595. Accordingly, the court held that under those facts "there was competent evidence reasonably tending to support the trial court's conclusion, and to support the judgment in favor of [the buyer] on the ground of breach of implied warranty under both § 2–314 and § 2–315 of 12A O.S.1971." *Id.* at 594.

Based on its decision in *Wood*, we believe the Oklahoma courts follow our interpretation of section 2–315. The court focused specifically on the fact that the seller was aware of the particular purpose for which the fertilizer would be used. We do not believe such evidence would have been critical unless the court was following our interpretation of section 2–315.

[  ] We acknowledge the similarity between our case and the facts of *Wood*. One critical distinction, however, mandates a different result in this case. Unlike the fertilizer in *Wood*, which can have many formulations for various purposes, the shale shakers involved here have only one possible use. Consequently, we must conclude that while the fertilizer involved in *Wood* was for a particular use, the shale shakers here were purchased for their ordinary use.

Plaintiff cites two additional Oklahoma cases that are also distinguishable. In *Larrance Tank Corp. v. Burrough*, 476 P.2d 346 (Okla.1970), the defendant provided underground tanks to plaintiff for the storage of gas. The court upheld the plaintiff's subsequent claim under section 2–315. However, unlike this case, it is likely that the tanks could have been used for a variety of purposes and that the defendant was well aware that the tanks would be used for the particular purpose of holding gas. Moreover, the case does not clearly adopt an interpretation of section 2–315 contrary to our own reading of *Wood*. Plaintiff also cites *Old Albany Estates v. Highland Carpet Mills*, 604 P.2d 849 (Okla.1980). In *Old Albany* the defendant provided carpet to the plaintiff knowing that it would be used in an apartment building. When the carpet wore out prematurely, the plaintiff sued under section 2–315. The Oklahoma Supreme Court held that the plaintiff was entitled to damages under section 2–315. In *Old Albany* the defendant knew that a higher grade of carpet was necessary because of the plaintiff's particular use. As discussed above, however, the shale shakers in this case were not used in an unusual or "particular" manner.

### III. Conclusion

We interpret Oklahoma's adoption of section 2–315 of the UCC in conformity with

---

**2.** Comment 2 following section 2–315 states:

A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

A contract may of course include both a warranty of merchantability and one of fitness for a particular purpose.

Okla.Stat. tit. 12A, § 2–315, comment 2 (1981).

our prior interpretation of the same section adopted in Colorado. We hold that section 2–315 requires a particular purpose or use separate from the general or ordinary use of the product. The record before us indicates that plaintiff used the shale shakers in the normal, general manner that the shakers were typically used. We hold that such use does not fall under section 2–315. Thus, plaintiff has made no claim under section 2–315, and the trial court's failure to grant a directed verdict must be reversed.

We REVERSE the trial court's judgment in this case and REMAND to the district court for further proceedings consistent with this opinion.