## MAGNA OIL & REFINING CO. v. PARKVILLE OIL CORP.

No. 14221—Opinion Filed Dec. 4, 1923.

(Syllabus.)

1. **Contracts — Acceptance — Added Terms Implied by Law.**

An acceptance of a contract upon modified and added terms constitutes a counter offer and not an acceptance, but, in determining whether the acceptance contains additional terms, not only express terms of the offer, but all of the terms which the law implies and makes a part thereof should be considered, and, where the offer is silent as to certain terms which the law implies and the acceptance contains no additional terms except those implied by law as a part of the offer, the acceptance completes the contract.

2. **Frauds, Statute Of — Completeness of Writing.**

A written contract, in order to satisfy the statute of frauds, must be a complete

contract, and no part of the contract can rest in parol.

**3. Same — Sales — Time of Delivery.**

A contract which does not specify the time of delivery is not an incomplete contract, as the law implies a delivery within a reasonable time, and proof that the parties to the contract orally agreed on a time for delivery does not invalidate the written agreement, as all prior oral negotiations and agreements are merged in the written contract.

**4. Same — Place of Delivery.**

A contract which provides for delivery f. o. b. buyer's cars, in the absence of any other provision as to place of delivery, is deemed to mean f. o. b. buyer's cars at the plant of the seller, and the contract containing such provision is not incomplete as to place of delivery.

**5. Same — Amount of Gasoline to be Delivered — Capacity of Cars.**

A contract providing for the delivery of two tank cars of gasoline f. o. b. buyer's cars, in the absence of proof as to custom and usage of the trade in regard to the capacity of the cars, means the capacity of two cars to be furnished by the buyer, and the amount is limited only by the capacity of the cars furnished, and such provisions were sufficiently definite to render the contract valid.

**6. Same — Time of Delivery — Effect of Seller's Leniency.**

Where a contract required to be in writing by the statute of frauds provides for delivery within a specified time, leniency on the part of the seller in requiring acceptance of the goods within the specified time and which does not amount to an agreement to modify the written contract, will not defeat the seller's right to recovery on the original contract.

**7. Sales — Refusal to Accept — Measure of Damages — Resale.**

Where a buyer refuses to accept goods bought by him, it is not necessary for the seller to make a resale of the property which the buyer has refused to accept and pay for in order to fix the amount of damages under subd. 3, sec. 5987, Comp. Stat. 1921; but, in case a resale is made it is not necessary to follow the procedure provided for the sale of pledged property, and the manner of the sale is within the reasonable discretion of the seller.

**8. Appeal and Error — Discretion of Trial Court — Allowance of Amendments.**

The matter of the allowance of an amendment to pleadings rests within the sound discretion of the trial court, and the action of the trial court will not be disturbed on appeal unless there is an abuse of discretion.

**9. Sales — Damages for Refusal to Accept — Resale — Interest on Recovery.**

In an action for damages for breach of contract to accept goods bought, where the measure of damages has been determined by a resale, interest should be allowed on the amount of recovery from the date of the resale.

Error from District Court, Tulsa County: W. B. Williams, Judge.

Action by the Parkville Oil Corporation against the Magna Oil & Refining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Carroll, O'Meara & Silverman, for plaintiff in error.

Carter Smith and James R. Cole, for defendant in error.

COCHRAN, J. The Parkville Oil Corporation brought this suit against the Magna Oil & Refining Company to recover damages for the failure of the Magna Oil & Refining Company to take and pay for certain gasoline alleged to have been sold to it by the Parkville Oil Corporation. The parties will be hereinafter referred to as plaintiff and defendant, as they appeared in the trial court.

The defendant contends that there was no contract between the parties, for the reason that the purported written acceptance by plaintiff of defendant's written order changed the terms of the written offer and amounted to a counter offer instead of an acceptance. Defendant's written order was dated October 23, 1919, and ordered two tank cars of gasoline to be shipped upon arrival of buyer's cars at a price of 21 cents per gal. f. o. b. buyer's cars, group 3. The purported acceptance of the plaintiff was dated October 24, 1919, and read:

"This is to acknowledge receipt of your orders No. 559 and 561, for two cars of 80-84 gravity, 330 end, straight absorption gasoline at 21 cents f. o. b. buyer's insulated cars, group 3. We note that R. G. C. X. 102 in route to our siding to apply on this order, and we are on the lookout for this car. We will be able to load the second car in about two weeks and will advise you in time to have one sent us."

The defendant contends that this purported acceptance amounted to a counter offer instead of an acceptance because it changed the time of delivery to two weeks from the date of the order and that the cars to be furnished were to be insulated. The written acceptance provides no time for the delivery of the gasoline, but simply notified the defendant that the plaintiff would be ready to load the two cars in about two weeks. There is nothing in this acceptance inconsistent with the provisions of the written order. The order did not specify the character of tank cars to be furnished and the written acceptance did provide for

insulated cars. The uncontradicted testimony shows, however, that at the time this contract was made, the I. C. C. tariff rules permitted the shipment of gasoline only in insulated cars. The parties must be deemed to have contracted with the knowledge of these rules and the offer of the defendant must be construed as containing the implied provision to that effect. The written acceptance, therefore, added nothing and changed in no manner the offer of the defendant, and, upon the acceptance being communicated, the contract was completed.

The defendant next contends that there was no valid contract between the parties because this contract was required to be in writing under the statute of frauds and in order to comply with the statute it is necessary that the writing contain the entire contract between the parties and that no part of the contract can rest in parol. Baker v. Haswell & Taylor, 36 Okla. 429, 128 Pac. 1086; Halsell v. Renfrow, 14 Okla. 674, 78 Pac. 118.

It is contended that the written contract in the instant case is silent in the following respects: (1) Time and place of delivery; and (2) quantity of goods sold.

As to the place of delivery, the contract provided that the same should be f. o. b. buyer's cars. The defendant contends that because the testimony developed that it was originally agreed that the gasoline should be delivered at the plaintiff's plant at Shamrock, Okla., the contract rested partly in parol and partly on the writing as to the place of delivery. Such is not the case, because the provision in the contract that the gasoline was sold at 21 cents f. o. b. buyer's cars. group 3, in the absence of any other provision, is presumed to mean f. o. b. buyer's cars at the plant of the plaintiff, which was at Shamrock, Okla. Lodwick Lbr. Co. v. Butt Lbr. Co., 35 Okla. 797, 131 Pac. 917; Drumm-Flato Comm. Co. v. R. C. Edmisson, 17 Okla. 344, 87 Pac. 311.

In Janney v. Sleeper, 30 Minn. 473. 16 N. W. 365, the court said:

"If no place be designated by the contract, the general rule is that the articles sold are to be delivered where they are at the time of the sale. The store of the merchant, the shop of the manufacturer, and the farm of the farmer, at which the commodities sold are deposited or kept, must be the place of delivery, when the contract is silent upon the subject; at least, when there are no circumstances showing that a different place was intended. This is a rule of construction predicated upon the presumed understanding of

the parties when making the contract. * * * This rule is not changed by the fact that plaintiffs did not have the goods on hand at their place of business at the time of the sale, but had to procure them elsewhere in order to fulfill their contract. Potentially and prospectively the goods were as if then situate in their store at Minneapolis. Hence, in the absence of any evidence as to the place of delivery, it would be presumed to be at Minneapolis."

In Menz Lbr. Co. v. McNeeley (Wash.) 108 Pac. 621, 28 L. R. A. (N. S.) 1007, the court said:

"It is our understanding that the phrase or formula 'f. o. b. cars' has by long usage and custom acquired throughout the business circles of this country a definite and specific meaning generally understood by all business people. When such phrase or formula is used in a business contract between a buyer and seller of ordinary commercial commodities. where the use of a common carrier is necessary, the parties intend thereby that the seller will at his own expense do all that may be necessary to accomplish the loading and consignment of the goods to the buyer, including the procuring of cars upon which to load the commodities sold; and, when nothing appears to modify or limit this meaning, court should enforce the contract so as to effectuate this intent. The rule is reasonable. It harmonizes with existing business conditions, and is the universal practice among business people. It is conceded that, by this phrase, the seller is bound to deliver the goods to the buyer placing them on board the cars."

The parol testimony showing that the agreement was for the delivery of the gasoline at plaintiff's plant at Shamrock did not change in any manner the written contract, as the provisions of the written contract required the delivery on board the buyer's cars as clearly as though that provision had been written into the contract in so many words.

As to the contention that the contract did not satisfy the statute of frauds because it is silent as to the time of delivery, it is conceded by the defendant that when a contract does not specify the time within which it is to be performed, the law implies as a part of the contract that it shall be performed within a reasonable time. This court has so held in Cameron Coal & Mercantile Co. v. Universal Metal Co., 26 Okla. 615, 110 Pac. 720. The defendant admits that if no agreement had been made between the parties as to the time of delivery, the contract in the instant case would have been sufficient to satisfy the statute of frauds, but, since the witnesses for the plaintiff testified that an agreement

was made between the parties that the delivery should be within two weeks from the date of the contract, the written contract is incomplete and does not satisfy the statute of frauds because a portion of the contract was not embodied in the written instrument. In our opinion, the contention of the defendant is not well taken, for the reason that the written contract was a complete contract in itself. Since no time for delivery was stated in the contract, the law implied a delivery within a reasonable time. Although the parties may have agreed in their negotiations that delivery should be made within two weeks, if the written contract did not contain that provision, oral testimony could not be introduced to prove that such was the agreement, as all of the previous negotiations and agreements between the parties are deemed to have been embodied in the written agreement and we must look to the written contract and not to the oral agreement between the parties prior to the execution of the written agreement; but the failure to insert in the written contract the oral agreement as to the time of delivery would not render the contract incomplete and invalid under the statute of frauds.

It is next contended that the contract was invalid because it did not specify the quantity of goods sold. The only provision in the contract relative to the quantity of gasoline which the defendant agreed to buy and plaintiff to convey was that the defendant bought and the plaintiff agreed to convey two tank cars of gasoline, the same to be delivered in buyer's cars. The testimony tended to show that there were two sizes of cars used in the shipping of gasoline in common use, being of eight and ten thousand gallon capacity. The defendant relies upon the general rule stated in 25 R. C. L. 648, as follows:

"Where the sale is of a quantity of a commodity, the quantity must be stated with reasonable certainty as well as its kind."

In the instant case, we are of the opinion that the quantity was specified with reasonable certainty. The written contract bound the plaintiff to deliver two tank cars of gasoline to fill the cars furnished by the the buyer, which meant that plaintiff was bound to deliver a sufficient amount of gasoline to fill the cars furnished by the buyer to capacity. This provision was sufficiently definite to comply with the general rule above stated. In Covington v. Ferguson (Ala.) 85 South. 726, the court said:

"Where the goods are sold by the 'carload' the term may be construed by the custom of trade, but in the absence of any agreement or particular custom it will ordinarily be held to mean the capacity of a car used for transporting the particular kind of goods sold; So, too, a sale of a 'cargo' of goods means ordinarily the entire load of the vessel and is limited only by the capacity of the vessel." (35 Cyc. 210.)

See, also, Hayes v. Cardwell (Kan.) 192 Pac. 757, Holland-Cook Mfg. Co. v. Consolidated Wagon & Machine Co. (Utah) 161 Pac. 922; Hull v. Westerfield (Neb.) 186 N. W. 992; Indianapolis Cabinet Co. v. Herrman (Ind.) 34 N. E. 575.

The defendant contends, however, that in the instant case no proof was offered showing a custom or usage of the trade in regard to capacity of the cars where no capacity was specified in the contract, but we are of the opinion that in the absence of any testimony showing the particular usage or custom the contract in the instant case means the capacity of two cars to be furnished by the buyer, and the amount of gasoline to be delivered was limited only by the capacity of the cars to be furnished by the buyer, and that this provision of the contract was sufficiently definite to render the contract valid.

It is next contended that the contract is unenforceable because the provisions of the written agreement were modified orally and the modification was not in writing and was not supported by a new consideration, and that the plaintiff is attempting to recover partly on the written contract and partly on the oral contract, or is attempting to recover on the written contract as modified by the subsequent oral contract. It is defendant's contention that because the plaintiff contended that the original delivery should have been completed within two weeks, but on account of this request made by the defendant to extend the time of performance the plaintiff delayed making a resale of the property for some weeks, this constituted a modification of the original contract and plaintiff is not entitled to recover. We cannot agree with this contention for two reasons. In the first place, the testimony does not show that the plaintiff agreed to an extension of time of delivery. At most, the testimony only shows a forbearance on the part of the plaintiff during several weeks when he had the right to make a resale of the property under the terms of the original agreement, but the testimony does not show that there was any modification of the original contract by agreement of the parties. In the second place, if it be conceded that verbal agreement was made extending the time for the performance of the contract beyond the time named in the original contract, such

agreement does not prevent the plaintiff from recovering in this case. The defendant relies on Bonicamp v. Starbuck, 25 Okla. 483, 106 Pac. 839, and Woods on Statute of Frauds, section 384. In the Oklahoma case referred to, the plaintiff was attempting to recover on a modified contract. In other words, it was necesary for him to establish the modified contract in order to enable him to recover, and the rule contended for by the plaintiff has been held by a number of courts, to apply to a case of that kind, but it has been held that the plaintiff may sue upon an original contract and defendant cannot set up in defense an oral modification as an excuse for failure to perform the original contract. It has also been held by a number of the courts that the time of payment or of performance of a contract within the statute of frauds may be changed by parol and that a suit may be brought on the original contract as modified by the parol agreement relative to the time of payment or performance of contract. This doctrine of substituted performance has not been accepted in many of the states. A full discussion of this question may be found in the note to Cummings v. Arnold (Mass.) L. R. A. 1917B, 163-171, but in those states where the power to modify the contract by parol to the time of payment and performance has been denied, a distinction is made between mere leniency on the part of the party seeking to enforce the contract in demanding or requiring performance by the other party, and it is held that this does not in any way affect his right to sue on the contract. This is the condition presented in the instant case, as the testimony shows nothing more than mere leniency on the part of the plaintiff in the enforcement of its contract.

It is next contended that the judgment is erroneous because it permitted a recovery of the difference between the contract price and the price received on the resale of the property. It is the contention of the defendant that the amount of damages should be fixed by the difference between the contract price and the market value on the date the delivery should have been made under the contract. In the instant case, a resale of the gasoline was made on January 3, 1920, and the recovery had in the case was the difference between the contract price and the amount received for the gasoline on the resale. In the absence of any testimony showing that the plaintiff waited an unreasonable length of time to make the resale, the measure of damages applied in the instant case was correct under the decision in Guthrie Mill & Elevator Co. v. Thompson, 59 Okla. 173, 214 Pac. 716, in which the following language was used:

"Where the seller of personal property, on refusal of purchaser to accept, elects to resell the same, it is not in general the duty of the seller to resell immediately or at the contract place for delivery; but it is generally his duty to resell within a reasonable time, and, in the absence of any evidence as to the market value of the goods at the time of the refusal to accept, the price received on resale will be regarded as market value."

It is contended by the defendant that the price received on the resale does not fix the market value of the goods in the instant case because the resale was not made in accordance with the provisions of the statute relating to sales of pledged property. On that point the court, in Guthrie Mill & Elevator Co. v. Thompson, supra, said:

"It is not necessary for the seller to make a resale of the property which the buyer has refused to accept and pay for in order to fix the amount of damages under subdivision 2, sec. 5987, Comp. Stat. 1921; but, in case a resale is made it is not necessary to follow the procedure provided for the sale of pledged property, and the manner of the sale is within the reasonable discretion of the seller."

Section 6008, Comp. Stat. 1921, provides:

"In estimating damages, the value of property to a seller thereof is deemed to be the price which he could have obtained therefor in the market nearest to the place at which it should have been accepted by the buyer, and at such time after the breach of the contract as would have sufficed, with reasonable diligence, for the seller to effect a resale."

There was no contention made in the trial court that the resale was not made with reasonable diligence, and in the market nearest to the place at which it should have been accepted by the buyer. In this condition of the record, we are of the opinion that the amount of damages was properly determined under subdivision 2, of section 5987, Comp. Stat. 1921.

It is next contended that the court erred in refusing to allow the defendant to amend its answer during the trial of the case to conform to the proof offered in the case. The matter of the allowance of the amendment to pleadings rests within the sound judicial discretion of the trial court, and the action of the trial court will not be disturbed on appeal unless there is an abuse of discretion. Burr v. Gordon, 68 Okla. 254, 173 Pac. 527; Joines v. Combs, 38 Okla. 380, 132 Pac. 1115; Cohee v. Turner, 37 Okla. 778, 132 Pac. 1082.

The defendant in error has filed a cross-petition in error herein wherein it complains of the action of the trial court in refusing to allow interest on the amount of the recovery. The judgment entered in the case allowed interest from the date of the judgment. The verdict of the jury read:

"We, the jury, impaneled and sworn in the above entitled cause, do upon our oaths find the issues for the plaintiff and fix the amount of its recovery at $1,195 and 6% interest."

It is evident from this verdict and the testimony in the case that the jury did not figure interest on the sum of $1,195 allowed as damages and intended the interest to be computed in addition to that amount. In St. Louis, E. R. & W. Ry. Co. v. Oliver, 17 Okla. 589, 87 Pac. 423, the court said:

"Where it is clearly apparent that the prevailing party is entitled to interest upon the amount found in the verdict, and it is unquestionably clear that the jury allowed no interest. or where the court reserved the question of allowance of interest until after the verdict, and it is clearly ascertainable from the verdict or uncontroverted facts the date from which, and to which, interest should be allowed, and the rate is fixed, the court may make the computation and add the interest so found to the sum found in the verdict and render judgment for the aggregation amount."

In the instant case, the amount of damages recoverable was capable of being made certain by calculation, as the amount was determined by deducting the amount received on the resale from the contract price, and the right to recover same was vested in the plaintiff on the date of the resale, and in these circumstances we are of the opinion that interest should have been allowed on the amount of recovery allowed by the jury from January 3, 1920, and that the judgment of the trial court should be modified so as to allow judgment for the plaintiff against the defendant in the sum of $1,195 with interest at 6% from January 3, 1920, and, as so modified, the judgment of the trial court is affirmed.

JOHNSON, C. J., and KENNAMER, NICHOLSON, and BRANSON, JJ., concur.