**DANZINGER et al. v. GEORGE W. RALLS CO.**

No. 19399.   Opinion Filed June 3, 1930.

Commissioners' Opinion, Division No. 1.

**2**

T. G. Chambers, Jr., and Ben Arnold, for defendant in error.

J. B. Dudley, D. M. Cavaness, and Kittie C. Sturdevant, for plaintiff in error.

BENNETT, C. This is an appeal from a judgment rendered by district court of Oklahoma county in an action brought by Geo. W. Ralls Company, a corporation, as plaintiff, against Samuel Danzinger and G. H. Danzinger, doing business as a copartnership under the name of Danzinger Broom Corn Company, and Scott Moore, defendants. The parties will be referred to as they appeared in trial court.

The petition alleges that the broom corn company is a copartnership consisting of Samuel and G. H. Danzinger, with its principal place of business at Chickasha, Okla., and that on November 11, 1925, plaintiff corporation and defendants Samuel Danzinger and G. H. Danzinger entered into a written contract whereby plaintiff sold to defendants an interest in certain broom corn which was shipped by plaintiff from Woodward, Okla., to said defendants at Chickasha, Okla., and by appropriate allegations the petition sets out the terms of the contract and the full performance by the plaintiff and the failure of performance by defendants of the terms thereof, alleging also that all the broom corn was sold under the terms of the contract May 27, 1927, to Scott Moore, and out of the purchase price thereof, $2,927.89, with interest thereon from the last-named date, is due the plaintiff, but that all of the purchase money is about to be paid over by the purchaser to, and under the demands of, the Danzingers; plaintiff prays for injunction and for judgment. Plaintiff declares upon the contract aforesaid and makes a copy thereof a part of its petition. The defendant, after making certain pleas to the jurisdiction hereinafter referred to, by answer, denies the plaintiff's petition, the execution by the defendant of the exhibit thereto attached and the authority of those purporting to execute the same for defendant, but alleges that said parties did execute a contract in writing, a copy of which is attached to and made a part of defendant's answer.

This contract deals in detail with the same subject-matter and is substantially a copy of plaintiff's exhibit "A," except it provides that the insurance shall be carried upon the broom corn to the extent of 80 per cent. of its value; that the storage for the first month shall be 25 cents per bale instead of 10 cents, and that, upon final sale of the broom corn, plaintiff is to receive $86 per ton, plus 50

per cent. of the net profits above $186 per ton, instead of $96 per ton plus 50 per cent. of net profits above $196 per ton.

Defendants deny the consummation of the sale of said property to Scott Moore; deny that the broom corn company was a copartnership, and that G. H. Danzinger had any interest therein, but aver that Samuel Danzinger owned and operated the broom corn company using the name as a trade name only.

At the conclusion of the evidence, the cause was dismissed as to G. H. Danzinger.

The cause was tried to a jury resulting in a judgment for plaintiff and against Samuel Danzinger, from which he appeals.

The first contention urged by Samuel Danzinger and the broom corn company is that the court erred in overruling their plea to the jurisdiction of the court over the person of said defendants, and their motion to dismiss the cause, preserved under their assignment Nos. 1, 2, 3, 9 and 10. This special plea by Samuel Danzinger and the broom corn company is entitled "plea to the jurisdiction of the court and motion to dismiss," and they enter what they term a "special appearance" for the purpose of challenging the jurisdiction of the court, not only over the person, but also over the property of said defendants, and in connection therewith move to dismiss the cause as to said defendants. They set out that no summons was had or attempted upon said defendants; that they reside outside of the state; that the Danzinger Broom Corn Company was not a partnership; that G. H. Danzinger was neither a partner nor interested in said company, but only an employee; that these defendants and each member of the partnership or firm of broom corn company are nonresidents of Oklahoma; that no garnishment or attachment writ has been sued out; that G. H. Danzinger is not an agent for service of the broom corn company or Samuel Danzinger; that Samuel Danzinger is sole owner of the broom corn company. Attached to and made part of the plea is the affidavit of Samuel Danzinger to effect that he is one of the defendants named in said action; that affiant is a resident of Pittsburgh, Pa., and is sole owner of the broom corn company, and that G. H. Danzinger is employed at a monthly salary and is not interested in the profits or losses of the business done under said name, and that the affidavit is made for use as evidence in the trial of the action pending in the district court of Oklahoma county; also, the affidavit of George H. Danzinger to similar effect and in addition, that at the

time of filing of said action he was a minor under the age of 21 years. These motions were denied and the case proceeded to trial. In support of defendants' plea to jurisdiction, it was claimed that no summons had been served upon either Samuel Danzinger or the broom corn company as such, and that since there was no partnership a service of summons upon George Danzinger was not sufficient to bring before the court either the partnership or Samuel Danzinger, and also that the suit was brought in the wrong county.

Plaintiff contends that the law cited in support of these contentions is inapplicable to the facts here. Plaintiff does not contend that service was had upon either Samuel Danzinger, or upon the copartnership as such. It is, however, plaintiff's contention (and with which we agree) that Samuel Danzinger made, in effect, a general appearance without respect to nomenclature of his pleading.

The record shows a summons issued in the cause addressed to sheriff of Oklahoma county commanding him to notify G. H. Danzinger, Samuel Danzinger, and Scott Moore. The return shows service on G. H. Danzinger June 1, 1927, Scott Moore June 2, 1927, and that Samuel Danzinger could not be found. Shortly thereafter Samuel Danzinger filed for himself and the company plea to the jurisdiction of the court over the persons and property of defendants last named, and as to them moved the court to dismiss the cause.

It is common learning that, where one wishes to attack jurisdiction of the court over his person, he should present that question alone. He should seek no other relief of the court whose jurisdiction he denies. He should not present matters pertaining to the merits on pain of having recognized and invoked the jurisdiction which he attacks. A failure to observe this rule constitutes general appearance. The courts have gone to great lengths in support of this doctrine, and have seized upon seemingly unimportant deviations as sufficient to make and hold the appearance general. This perhaps is due to the fact that appearances universally are presumed to be general and courts are slow in yielding a sympathetic ear to one who is present only for the purpose of showing the court that his presence is absent. A detailed discussion of the various phases of appearances and motions to dismiss herein would be of doubtful value, but, after careful study, we conclude that they are more than a challenge to the jurisdiction of the court over the person of de-

fendants. It will be observed that there is a challenge of the jurisdiction of the court over the property of defendants and a motion to dismiss the action. There is a denial of plaintiff's allegations as to existence of a copartnership of which Samuel and George were members; it is alleged that Samuel Danzinger was sole owner and user of such broom corn company under such a name for trade purposes only; that George Danzinger was a minor under the age of 21 years and an employee of Samuel, and that said minor was not interested in the profits or losses of such company.

One can scarcely escape the thought that this motion is, in effect, a challenge of the cause of action, if not the sufficiency of the petition. The motion to dismiss calls for the exercise of the power of the court with reference to the subject-matter. The court was not only asked, in effect, to quash a summons or the service and return thereof, but also to dismiss the action, which is an entirely different matter. It might have been proper for the court to have quashed the summons, in which event an alias might have been issued or even a summons by publication, in a proper case, might have been made, but when a cause is dismissed as to a party, further remedies against such party must be sought in a new suit and the status of the parties is materially changed by the dismissal.

A few of the many cases supporting the rule here announced will be referred to.

In Teater v. King (Wash.) 76 Pac. 688, the first paragraph of the syllabus is as follows:

"Where, after issuance of the summons and a writ of restitution in an action of unlawful detainer, the defendant filed a motion, in form of a special appearance, to quash the summons and writ and dismiss the action, his appearance was general, so that, though the summons was quashed, it was proper to refuse to quash the writ or dismiss the action."

The court in the opinion says:

"The appellant's position is that the action abated when the original summons and service thereof were quashed and set aside, and therefore carried the proceedings for the writ of restitution with it, as an incident, and that the trial court erred in not quashing the writ and dismissing the case. There would be much force in appellant's contention if he had not asked the court below to dismiss the action. The appearance of appellant was, in form, special for the purpose of objecting to the court's jurisdiction over his person, but in the body of his motion he in-

voked the jurisdiction of the court below on the merits when he asked for a dismissal. A party desiring to successfully challenge jurisdiction over his person should not call into action the power of the court over the subject-matter of the controversy. By so doing he waives his special appearance, and will be held to have appeared generally. Fitzgerald Const. Co. v. Fitzgerald, 137 U. S. 98, 11 Sup. Ct. 36, 34 L. Ed. 608; Sayward v. Carlson, 1 Wash. 29, 23 Pac. 830; 2 Enc. Plead. & Prac. 625; Bucklin v. Strickler, 32 Neb. 602, 49 N. W. 371."

In the case of Gilna v. Barker (Mont.) 254 Pac. 174, the fifth paragraph of the syllabus is as follows:

"Any kind of appearance, except special appearance, limited to challenging jurisdiction of person, is 'general appearance,' and waives question of jurisdiction of person." (Citing Hinderager v. MacGinniss, 61 Mont. 312, 202 Pac. 200; State ex rel. Mackey v. District Court, 40 Mont. 359, 106 Pac. 1098, and other cases.)

To the same effect is Grieve v. Huber (Wyo.) 266 Pac. 128, wherein the court, in paragraph 3 of the syllabus says:

"In order that an objection to jurisdiction of person may be held to be special, it must be limited to an attack directed against process itself or service thereof, or both."

The court in the opinion following the above quotation says:

"If objections go beyond this, they must necessarily be held to be nonjurisdictional in character in so far as jurisdiction of the person is concerned, and will, if they bear any substantial relation to the cause, constitute a general appearance and a waiver of failure or defect in the process of the service thereof."

In the case of Isham v. People (Colo.) 262 Pac. 89, the sixth paragraph of the syllabus is as follows:

"Appearance to raise objection to court's jurisdiction of subject-matter is 'general appearance' not special one, since in 'special appearance' only objections to court's jurisdiction of person may be raised; 'general appearance' being entered by making a motion that involves the merits."

In the case of Webster v. Crump, 117 Okla. 244, 246 Pac. 423, the court in the second paragraph of the syllabus says:

"Where a defendant denies the jurisdiction of the court over his person, he may, by special appearance, present that single question; but, where, in the same motion, he presents questions calling for a ruling of the court upon the sufficiency of the facts stated in the petition to constitute a cause of action and jurisdiction of the court over the subject-matter, he thereby enters a general appearance, and waives all defects in the process by which he was brought into court."

There was a special appearance and motion to quash and dismiss in that action, which is, in essential particulars, very similar to the one presented here. The court in the opinion, held:

"It is the settled rule in this state that, where a defendant denies the jurisdiction of the court over his person, he may, by special appearance, first present that single question; but, where he joins with the jurisdictional questions involving the merits of the action, and asks for affirmative relief, he thereby waives all defects in the summons and the service of the summons, and enters a general appearance. Welch v. Ladd, 29 Okla. 93, 116 Pac. 573; Nichols & Shephard Co. v. Baker, 13 Okla. 1, 73 Pac. 302; Rogers v. McCord-Collins Mer. Co., 19 Okla. 115, 91 Pac. 804; Lookabaugh v. Epperson, 28 Okla. 472, 114 Pac. 738; City Nat. Bank v. Sparks, 50 Okla. 648, 151 Pac. 225; C., R. I. & P. v. Austin, 63 Okla. 169, 163 Pac. 517, L. R. A. 1917D, 666."

The court in that case indicates that one of the grounds set out in the special appearance which constituted a general appearance by the defendant was its motion to dismiss the cause for want of jurisdiction.

In Jameson v. Harvel, 139 Okla. 39, 280 Pac. 1080, there appears a recent discussion of the question as to what appearances denominated "special" will be held to be general. Defendant there filed an instrument denominated "Special Appearance and Denial of Jurisdiction and Motion to Strike out," etc., in effect, upon the grounds that: (1) Defendant was a nonresident of Oklahoma county; (2) that the summons was served on the defendant in Kay county; (3) that the court had no jurisdiction of the subject-matter as against the defendant; (4) that the alleged action is not one of those permitted by the statute in which summons might properly be issued from another county; (5) that the court is without power or authority to issue summons to another county in such an action; (6) that the serving of summons as was done in this case does not give the court jurisdiction of the person of defendant; (7) that actions are wrongfully joined for the sole purpose of giving the court jurisdiction of defendant; wherefore the defendant prays that the action be dismissed in so far as same affected defendant.

Judge Andrews, in an exhaustive opinion, cited several of the cases hereinbefore referred to, and held that where defendant questioned the court's jurisdiction over his

person and also of the subject-matter, his appearance was general.

It will be observed that Samuel Danzinger, by his attorney, filed a motion to dismiss the cause as to himself, and also as to the broom corn company. In the motion and affidavits attached, as well as in the subsequent pleadings, it appears that the broom corn company was simply a fiction—Samuel Danzinger's shadow—which he used for the transaction of business in this state in all respects as if it were an entity; that it represented nothing and no one, however, either beneficially or otherwise, except himself; that George Danzinger, his son, who was in complete charge of this fiction and conducting business thereunder for Samuel, was just under 21 years of age; that he was not interested in the profits or losses of the broom corn company; that he was in the employ of his father under salary. The court held that the plea and motion to dismiss was not well taken. Later, after the evidence was in and the cause was dismissed as to George Danzinger, it was contended that the suit as to Samuel should then be dismissed, but the court, we think properly, refused that motion also.

In the state of the record, it was hardly necessary that Samuel Danzinger should have gotten into this case. Certainly no judgment would have been rendered against him without summons, unless, of course, he made an appearance in the action. But when he saw fit to appear in court in this action and raise jurisdictional and nonjurisdictional matter, and ask for a dismissal of the very cause in which he had appeared and raised such other questions for purposes, not necessary here to determine, pertaining to the merits of the controversy, we think he recognized and asked the aid of a court whose jurisdiction he chose to question. This may not be done by one who is not in court.

We think the question of the court's jurisdiction over the subject-matter has not been seriously stressed by the defendant, and under section 10, art. 7, of the Constitution, and in consideration of section 207, C. O. S. 1921, it is too clear for argument that the trial court had the right to try this action in Oklahoma county, if the defendant, Samuel Danzinger, could be found and served with summons in said county, or if, without notice of any kind, he made his voluntary appearance in the cause. Nichols & Shephard Co. v. Baker, 13 Okla. 1, 73 Pac. 302; Jameson v. Harvel, supra.

We conclude, therefore, that the court had jurisdiction of the subject-matter, and upon the appearance of Samuel Danzinger, which we hold to be general, the cause was properly triable before the district court of Oklahoma county.

The second proposition urged is that preserved by assignments Nos. 8, 11, 12, and 14. These assignments are argued together, and the chief point presented seems to be directed at the contention that since the contract sued on provides that the broom corn could not be sold without the assent of both parties, the action is prematurely brought. The parties differ widely as to what the evidence discloses; plaintiff says that the undisputed testimony shows a sale; defendant contends that the evidence conclusively establishes that no sale was consummated. Proof was offered by each of the parties on this issue. It is admitted all around, however, that Mr. Moore agreed to buy the broom corn at a price named; that same was weighed up to him; that he gave his check for the purchase money, insured the property in his own name, and took over warehouse receipts therefor. This would seem to indicate a closed transaction. Moreover, each of the parties consented to the terms of the sale by the acceptance of the check representing full purchase price of the broom corn. Defendant admits these facts, but contends that plaintiff prevented carrying out of sale by giving notice to purchaser not to pay the purchase money check. Plaintiff contends, however, and offers supporting evidence, that he was willing for the sale as made to be consummated; that while he gave notice to purchaser not to pay purchase money check to Danzinger Broom Corn Company, he did not seek to prevent the sale, but only gave notice in order that purchaser might pay plaintiff his part of proceeds of sale, and gave to purchaser notice of his interest in the broom corn. It was made known to defendant also that the proceeds of sale should and would be paid into the bank by purchaser to the end that each of the parties might be paid the amount due him, but defendant refused to permit this and took up the warehouse receipts. Light upon the situation may be thrown by the fact that plaintiff had used as collateral the contract upon which he sues at the bank at Lindsay and that at about the time of the sale of broom corn to Moore, George Danzinger, with full knowledge of the facts as to purchase of broom corn from plaintiff and of the contract evidencing same and of its use in the bank, informed the bank that plaintiff's contract was invalid or was a forgery. This proof is undisputed, and when knowledge of that fact came to plaintiff he insisted to purchaser and defendant that payment be made to the bank so that

he might receive his part thereof. We think that no prudent man would have done less, and we think that no one in the position of defendant should be allowed to demand more. Purchaser was willing to pay the money into the bank, but defendant would not permit it. We think, therefore, that the blame, if any, must lie with defendants.

It is argued also that the contract is ambiguous on its face. Plaintiff contends that its meaning is clear. When this contention was made by defendants, the trial court used this language:

"The Court: If there is anything about it that is ambiguous, I wish you would point it out."

No effort was made to enlighten the court on this point. The court, in effect, held the contract, under the pleadings, sufficiently clear, and we are of opinion the court was correct. It might be well to add that the contracts which the respective parties plead are identical except as to minor items as to valuations of broom corn, carrying charges, etc. They do not conflict as to the main features.

Assignments Nos. 4, 5, and 13 are discussed together. It is first urged that the contract sued on should not have been admitted in evidence without proof as to authority of Stirman to execute same. There was no error in admitting same. Stirman had charge of buying and selling broom corn for the company, subject only to supervision of George Danzinger, who, as Samuel Danzinger testified, had authority to do whatever he could have done. Furthermore, the broom corn was shipped under this contract and received by defendant and sold under our holding. The broom corn was never tendered back nor purchase money demanded.

A copy of this contract seems to have been forwarded to Samuel Danzinger, but he made no prompt offer to avoid or repudiate same. It would be idle to argue that one may take the benefits of an unauthorized contract, and at the same time deny the obligation contained therein. Section 5013, C. O. S. 1921. No fraud or mistake is pleaded; in fact, defendant pleads a written contract almost identical with that sued on.

It is also urged that certain testimony dealing with negotiations looking to purchase of the broom corn was admitted over objection of defendant, and that same was error. These negotiations finally resulted in a written contract with reference to which, as to its main features, the parties do not disagree. In such circumstances, in the absence of fraud or mistake properly pleaded, we cannot see how the admission of this evidence could be reversible error.

It is argued that certain testimony as to rumors was introduced over defendant's objection. Rumors usually are very unsubstantial matters and evidence of rumors must be even more unsubstantial. We cannot hold that the evidence here introduced, even if incompetent (which we do not decide), is ground for reversal, for we cannot believe that defendant has been prejudiced thereby. Much correspondence was introduced by each party, but little of which could have affected this case, and none of which could have determined it. There was no allegation of fraud, bad faith, or even mistake. Since the contract entered into was clear in its terms and the broom corn was accepted and paid for thereunder, we see no reason why it should not be binding. It could not be seriously contended by defendant that, under the facts here, the contract already made by defendants' agent could be changed so as to bind plaintiff by interlining it as to the price of the product after delivery of the product by plaintiff in reliance upon the integrity of the contract.

In reading the record in a controversy of this kind, one wonders if, subsequent to the purchase, broom corn had risen in price instead of falling, the authority of the agent Stirman would have been brought into the question, or if the fact that George Danzinger was under 21 would have ever become known, or if it would have been disclosed that the broom corn company was nothing but a name, and if the interlineations in the contract made by the defendant would ever have been brought to light.

Defendant contends, in effect, that this was not a purchase at all, but was simply a loan of $100 per ton on broom corn, at least as to one-half thereof. This meaning does not crop out on the face of the contract.

Under assignments Nos. 6 and 7, objection is made to instructions Nos. 9 and 10. The first is to the effect that if Stirman signed the contract sued on and George Danzinger assented to the same and no other contract was entered into, plaintiff should recover. No. 10 indicates that if Stirman had no authority to make the contract and if no other contract were entered into, and if it should be found that George Danzinger, with knowledge of the contract, retained the broom corn, plaintiff should recover. The only vice claimed in these two instructions is that they are upon theory unsupported by evidence. We find that there is abundant

evidence to support the theory upon which these instructions were given.

Defendant argues that the ratification of an unauthorized contract must be with full knowledge, etc. This argument seems to be predicated upon the assumption that George did not know the terms upon which the broom corn had been bought, or if he did, his father was not advised. This contention again overlooks the fact ever present in this case that the written contracts pleaded by the respective parties do not differ with respect to any provision which gave rise to this lawsuit. We might then ask why should the authority of Stirman or George to enter into the contract be drawn in question.

We have gone over the entire record, and some of it many times, and also the briefs, and we find no error that should reverse this case. The judgment of the trial court is affirmed.

TEEHEE, REID, HERR, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.