## O'DELL v. NELSON & MYERS.

No. 28200. April 26, 1938.

Rehearing Denied May 17, 1938.

Randall Pitman, for plaintiff in error.

Goode, Dierker & Goode, for defendants in error.

HURST, J. This is an action by the plaintiffs, Nelson & Myers, copartners, to recover damages from the defendant, Firmin T. O'Dell, for breach of a contract to purchase all the sand required for the construction of a municipal reservoir for the city of Shawnee. The controversy arose from the following circumstances: The defendant had the contract to construct the reservoir. Plaintiffs contend that they entered into an oral contract under which defendant agreed to purchase all the sand required for the project at $1.40 per cubic yard delivered at the site of the reservoir; that they did deliver 21 yards, for which defendant paid them $1.40 per yard; that they expended approximately $1,500 in getting ready to comply with the contract and in removing from the river to the bank thereof some 400 or 500 yards of sand, and purchased the remainder elsewhere, to their damage in the approximate sum of $1,500. The defendant admits that he purchased and paid plaintiffs for 21 yards of sand, but denies that he entered into any contract agreeing to purchase from plaintiffs all the sand for said project. There is a sharp conflict in the evidence as to whether such contract was made. The jury returned a verdict in favor of the plaintiffs and fixed the amount of their recovery at $750. The defendant appeals.

The first question presented is whether the court had jurisdiction of the person of the defendant. Summons was not served upon the defendant, but the defendant filed a motion to dissolve the garnishment order issued in the cause and to discharge the city of Shawnee, as garnishee, which motion was overruled. By this motion, which was based on nonjurisdictional grounds, the defendant entered his general appearance, and his position that the court did not acquire jurisdiction to render a personal judgment against him is without merit. Raymond v. Nix (1897) 5 Okla. 656, 49 P. 1110; Danzinger v. Geo. W. Ralls Co. (1930) 144 Okla. 1, 288 P. 975.

The principal question presented by the defendant goes to the measure of damages. The theory of the plaintiffs, both in their petition and evidence, is that the measure of damages is the expense they were out in getting ready to comply with the contract. This is the theory on which the court submitted the case to the jury by instruction No. 6. The defendant objected to the introduction of evidence, and to the evidence offered by plaintiffs on this theory, and to the instructions of the court, on the ground that plaintiffs' theory is incorrect, and requested the court to instruct the jury that the measure of damages is "the difference between the contract price and the cost of production of the sand at the place of delivery," which instruction was refused by the court and defendant excepted. However, the court did give instruction No. 5, at the request of the defendant, as follows: "You are instructed that in measuring damages to the seller upon breach of contract

of sale by the buyer, that in no event should a greater amount in damages be allowed a party than such party could have gained by a full performance of the contract on both sides." This instruction states the rule substantially as it is found in section 10000, O. S. 1931.

Plaintiffs contend that defendant represented to them that he would require from 2,500 to 3,000 cubic yards of sand to complete the concrete work in connection with said project. The undisputed evidence is that 837 cubic yards was all that was required, according to the plans and specifications. Plaintiffs alleged "the said defendant did covenant and agree to purchase all the sand required and to be used by it under its contract with said city, the exact amount thereof not being specified, but the amount was to be determined by and from said plans and specifications." As we understand the argument of the plaintiffs, they contend that they were induced to go to considerable expense in moving their machinery to a place on the North Canadian river, near where the reservoir was to be constructed, partly on the strength of the representation that the project would require from 2,500 to 3,000 cubic yards of sand, and this is not an action to recover merely for breach of the contract to purchase all the sand. From a careful examination of the record, we have come to the conclusion that the plaintiffs are in error in their contention. We are of the opinion that this is simply an action for damages for breach of the contract to purchase all the sand required for said project. The question, then, is, What is the measure of damages in such a case?

To support the theory on which the case was tried and submitted to the jury, the plaintiffs rely upon U. S. v. Behan, 110 U. S. 345, 4 S. Ct. 81; Muskogee Co. v. Yahola Sand Co. (1916) 60 Okla. 196, 159 P. 898; First Nat. Bldg. Co. v. Vandenburg (1911) 29 Okla. 583, 119 P. 224. These cases were for the recovery of damages for breach of a construction contract, and not for breach of a contract to purchase personal property. They are not in point here.

On the other hand, the defendant, to support his contention that the true measure of damages is the difference between the contract price and the reasonable cost of performance, cites and relies upon sections 9963, 9974, and 10000, O. S. 1931; 8 R. C. L. 455; 2 Sutherland on Damages (4th Ed.) sections 64 and 647; Masterton v. Mayor, 7 Hill (N. Y.) 61, 42 Am. Dec. 38; Mc-

Michael v. Price (1936) 177 Okla. 186, 58 P.2d 549; Long v. Higgins (1934) 169 Okla. 27, 34 P.2d 589; Henry H. Cross Co. v. Bell Oil & Gas Co. (1928) 129 Okla. 188, 263 P. 1105.

Section 9963, O. S. 1931, is a general provision defining the measure of damages for the breach of an obligation arising from contract. It provides as follows.

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin."

Likewise section 10000, O. S. 1931, is a general provision limiting the amount of recovery in such cases. It provides:

"Notwithstanding the provisions of this chapter, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides, except in cases where recovery may be for exemplary damages and penal damages, and in sections 2871 and 2878 (9982, 9989)."

However, as to the method for computing the damages pursuant to these general provisions, there are two situations presented in the instant case.

(a) There is testimony in the record to the effect that plaintiffs, pursuant to the contract, pumped from the river and stored on the bank thereof between 400 and 500 cubic yards of sand prior to the time defendant breached the contract. This sand, therefore, was owned by and in possession of the plaintiff, and we are of the opinion that as to such sand the second subdivision of section 9974, O. S. 1931, prescribes the criterion as "the excess, if any, of the amount due from the buyer, under the contract, over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying property to market, over those which would have been incurred for the carriage thereof, if the buyer had accepted it." In order to render this section applicable, it is not necessary for the seller to actually make a resale of the property. Magna Oil & Ref. Co. v. Parkville Oil Corp. (1923) 96 Okla. 157, 221 P. 65; Guthrie Mill & Elevator Co. v. Thompson & Gibson (1923) 89 Okla. 173, 214 P. 716. In the instant case, a resale was in fact not made,

and the evidence is to the effect that the sand was later washed away. For that reason the provision of the statute regarding the excess of the expenses incurred in carrying the property to market is not applicable. Therefore, in applying this section, there should be deducted from the contract price of such sand the value thereof to the seller, and the difference resulting therefrom represents the correct amount of damages. In determining the "value to the seller," again two situations may exist: (1) If the sand so reduced to possession has a market value, then the "value to the seller" would be the reasonable market value of such sand. Since there was no definite time fixed for performance of the contract, the market value must be determined at the time of the breach. See Home Bakery v. Robinson Milling Co. (1935) 170 Okla. 349, 40 P.2d 637; McCormick on Damages, p. 659. The cost of transportation should be considered in determining the market value. (2) If the sand so reduced to possession has no market value, then the "value to the seller" should be determined by the reasonable cost of performance. Masterton v. Mayor, supra.

(b) As to sand not reduced to possession by the plaintiffs, the rule announced in the leading case of Masterton v. Mayor, supra, furnishes the method of computing the damage. There the seller was to quarry marble, prepare it and deliver it for use in a public building. It was held that the method of computing the measure of damages for breach by the buyer was the contract price less the cost of performance. The court said:

"Where the article has no market value, an investigation into the constituent elements of the cost to the party who has contracted to furnish it becomes necessary, and that, compared with the contract price, will afford the measure of damages."

The case of Henry H. Cross Co. v. Bell Oil & Gas Co., supra, was an action by the seller to recover damages for breach of a contract by the buyer to purchase oil that the seller did not then have on hand. It was held that the "plaintiff's measure of damage is the difference between the contract price and the cost of production." The rule there applied is analogous to the rule of Masterton v. Mayor, supra. But it will be noted that the cost of performance may be more comprehensive than the cost of production in that the former may include items of transportation and other incidental expenses which do not strictly pertain to the cost of production yet which are a necessary expense in the performance. Inasmuch as the principal object is to give to the seller the profit which he would have made had the contract been carried out, we think the rule announced in Masterton v. Mayor, supra, is the proper one to be applied as to the sand not reduced to possession.

The case was tried below on an incorrect theory as to the measure of recovery. The defendant properly preserved his record. There is no evidence as to the value to the plaintiffs of the sand so reduced to possession other than the constituent elements of value represented by the royalty paid to the landowners for the privilege of removing the sand and the cost of removing and storing. There is no evidence as to the cost of loading, hauling, and unloading the sand at the place of delivery. There is therefore no evidence from which the jury could have properly determined the amount of damages due the plaintiffs as to either the sand reduced to possession or that not reduced to possession.

It will therefore be necessary that the case be reversed for a new trial.

■ Defendant's third proposition is that the court committed error in overruling his motion to strike from the record the testimony as to expenses incurred by plaintiffs prior to the time the contract was entered into. What we have said under the second proposition disposes of this question.

The judgment is reversed, with directions to grant a new trial and to proceed in accordance with the views herein expressed.

BAYLESS, V. C. J., and CORN, GIBSON, and DAVISON, JJ., concur.